### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF | : | |
| AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 07-140-GMS |
| | : | |
| MANUEL D. MEDLEY, | : | |
| | : | |
| Defendant. | : | |

### MOTION TO SUPPRESS EVIDENCE

Defendant Manuel D. Medley, by his undersigned attorney, hereby moves the Court for an Order suppressing from use at trial certain evidence seized by agents of the State of Delaware pursuant to a search warrant. In support of this motion, Defendant sets forth the following:

### FACTS

1. Defendant Manuel D. Medley is charged by Superseding Indictment with two counts of being a felon in possession of a firearm, one count of possession of more than 50 grams of cocaine base, and three counts of distribution of cocaine base.

2. Defendant was arrested on October 19, 2007. The above charges resulted from the execution of a search warrant by members of the Wilmington Police Department at 419 Washington Street, Apartment #4, in Wilmington, Delaware.

3. Detectives Todd Riley and Robert Cunningham applied for and received a nighttime search warrant for 419 Washington Street, bottom floor, rear apartment on October 19, 2007. A copy of the search warrant is attached as Exhibit A.

4.  When police officers searched the bottom floor rear apartment (subsequently referred to as Apartment #2), they found that it appeared to be vacant.  They spoke with a person sitting on the front steps of 419 Washington Street who told them that "Manny" had moved to the second floor, Apartment #4, within the last week or two.  This information was consistent with other information obtained from a person questioned by police, who was alleged to be an admitted member of Manuel Medley's drug distribution organization, that Medley planned to move his operation to the second floor.

5.  The officers then went immediately to the second floor and forced the door to Apartment #4 and found it to be unoccupied.  The officers state that they saw in plain view bags with what appeared to be drug residue in them.  Based upon this new information, the officers applied for and received a warrant to search Apartment #4.  A copy of the search warrant is attached as Exhibit B.

6.  As a result of the search of Apartment #4, the officers seized twenty-seven items, among them two firearms (Counts I and II of the Superseding Indictment) and the substance alleged to contain cocaine base in excess of 50 grams (Count III of the Superseding Indictment).  A copy of the Inventory and Affidavit is attached as Exhibit C.

## ARGUMENT

### A. No Exigent Circumstances Existed

7.  In the search warrant for Apartment #4 (Exhibit B), the officers claim in Paragraph 42 to have forced entry into Apartment #4 "due to exigent circumstances".  The officers recognized that they had a warrant only for Apartment #2 and had no legal authority to enter the unoccupied Apartment #4 in the absence of exigent circumstances.

8.  The Fourth Amendment to the U.S. Constitution protects persons in their homes from unreasonable searches and seizures, and a search is presumptively unreasonable when performed without a warrant unless (a) the occupants consent or (b) there is probable cause and exigent circumstances to enter.  United States v. Coles, 437 F.3d 361, 365 (3rd Cir. 2006).  Because there was no consent to enter this unoccupied apartment, the Government is required to establish that the officers both had "probable cause to enter *and* exigent circumstances exist[ed] to justify the intrusion."  Id.

9.  The possibility that evidence may be removed or destroyed is a recognized circumstance that may provide the necessary exigency.  Id. at 366.  However, as the Court in Coles noted, "'...the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches ....'"  Id. at 366, fn. 8, quoting Welsh v. Wisconsin, 466 U.S. 740, 749-50 (1984) (quoting United States v. United States District Court, 407 U.S. 297 (1972)).

10.  The circumstances recited by the officers in Paragraph 42 of the warrant (obtained after their entry into Apartment #4) are (1) that early in October 2007 an unidentified member of Medley's organization had told officers that Medley planned to move his "stash" house to the second floor within the next week or two (see also Paragraph 33, Exhibit A); (2) that Medley employed look-outs who live in the area; and (3) that the person sitting on the steps outside the building when the officers arrived had said that Medley had moved to Apartment #4 on the second floor.

11.  These circumstances are insufficient to meet the officers' "heavy burden" to justify the warrantless intrusion.  The officers do not even recite in the application and

affidavit for the search of Apartment #4 that they feared that evidence of drug dealing may

be removed or destroyed, and for good reason - given the information they had, they could

not have believed this to be the case.  Consider what the officers did know, or could have

readily ascertained:

      (a) the warrant does not recite whether they had asked the person sitting on

the steps whether anyone was home in Apartment #4;

      (b) the warrant does not state that look-outs had actually been seen in the

neighborhood that evening as they had been on prior occasions nor does it reiterate that the

look-outs stationed themselves on Jefferson Street, not Washington Street (see Paragraphs

13, 16, 17);

      (c) the warrant, executed at 8:17 P.M. (see Exhibit C), repeatedly states from

various confidential sources that Medley does not arrive to begin working until after 11:00

P.M. or even 12:00 P.M. (see Paragraphs 13, 17, 22, 23, 25, 30; Paragraph 28, however,

recites that Medley worked from 10 P.M. to 4:30 A.M.);

      (d) when the officers went to Apartment #4, they do not report having heard

anything inside, before their forced entry, that would lead them to believe that evidence was

being removed or destroyed (e.g., noise of running feet, flushing toilets);

      (e) warrants were being executed simultaneously at all four locations that

Medley was known to frequent in order to minimize the possibility of removal or

destruction of evidence;

      (f) Manuel Medley had been taken into custody at 4:50 P.M. that day at his

home in Newark, Delaware, more than three hours before the execution of this warrant at

8:17 P.M. (See paragraph 43, Exhibit B).

12.   The Court should also note that despite the fact that the officers had information from an informant before applying for the warrant for the bottom floor apartment that Medley may be moving soon to the second floor, they did not take any steps to determine whether that had occurred.  This lack of follow-up investigation indicates two things: that the officers gave little or no credibility to the information, since they did not rely on it to obtain the warrant for Apartment #2, or that they simply failed to investigate information that would have led them to the conclusion that the persons and things to be searched for would *not* be found in Apartment #2, and that Medley had moved to Apartment #4.  See Paragraph 33, Exhibit A.  When the conduct of the police themselves creates the exigency, the intrusion is unreasonable.  Id. at 370-371.  The Court examines the officers' conduct preceding the entry to determine reasonableness.  In Coles, the 3rd Circuit found that the decision to enter without a warrant was made before entry was attempted and was done "without any urgent need to do so" since the scene was secured and there was no indication that any persons inside were aware of the police presence.  These are precisely the circumstances in this case.

**B. Independent Source**

13.   This Court has adopted the independent source doctrine.  Under this doctrine, if a lawful warrant to search is obtained after an illegal entry, the evidence is admissible if the search warrant is based upon probable cause other than facts tainted by the initial unlawful entry.  United States v. Herrold, 962 F.2d 1131, 1141-42 (3rd Cir. 1992), *cert. denied,* Herrold v. United States, 506 U.S. 958 (1992).  The Court must determine "without regard

to information obtained during the initial entry" whether there was sufficient probable

cause for the issuance of the warrant. Id. at 1140.

14. In the case before the Court, the only information known to the police that

could support a finding of probable cause to search Apartment #4 was the information

provided by the unknown person, of unknown reliability, sitting on the steps of the

apartment building when the police arrived to execute the warrant for Apartment #2 on the

first floor (see Paragraph 41), and the earlier assertion by an unidentified "active member"

of Medley's organization that Medley was looking into the possibility of occupying an

unspecified apartment on the second floor (see Paragraph 33). The information from the

"active member" does not indicate which apartment on the second floor Medley may be

occupying nor do the officers at any time state how many apartments there are on the

second floor. This information is too sketchy and potentially unreliable to support a

finding of probable cause without the additional information obtained after the illegal entry

- that bags with apparent residue were seen in plain view (Paragraph 42) and that Medley

was subsequently found to have keys to Apartment #4 in his possession (Paragraph 43).

15. As the Court of Appeals stated in Herrold at 1144:

> In sum, the district court should have asked two questions:
> (1) whether a neutral justice would have issued the search warrant
> even if not presented with information that had been obtained
> during an unlawful search and (2) whether the first search
> prompted the officers to obtain the search warrant. If the answers
> to these questions are yes and no respectively,...then the evidence
> seized during the warranted search, even if already discovered in
> the original entry, is admissible.

In this case, there is insufficient evidence relating to Apartment #4 apart from the tainted

information to permit a neutral magistrate to issue the search warrant for Apartment #4 and, without the information obtained from the illegal entry, the officers would not have been prompted to obtain the warrant to search Apartment #4.  Therefore, all evidence seized from Apartment #4 must be suppressed as fruit of the poisonous tree.  Wong Sun v. United States, 371 U.S. 471 (1963).

WHEREFORE, Defendant Manuel D. Medley requests that the Court issue an Order suppressing from use at trial by the United States all evidence seized from Apartment #4, 419 Washington Street, Wilmington, Delaware.

JOSEPH W. BENSON, P.A.


/s/ Joseph W. Benson
Joseph W. Benson, Esq.
DE Bar No. 196
1701 North Market Street
P.O. Box 248
Wilmington, DE 19899
(302) 656-8811
Attorney for Defendant
Manuel D. Medley


Dated: February 11, 2008

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 07-140-GMS |
| | : | |
| MANUEL D. MEDLEY, | : | |
| | : | |
| Defendant. | : | |

### NOTICE OF MOTION

TO:   Shawn A. Weede, Esq.
Assistant United States Attorney
The Nemours Building
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046

PLEASE TAKE NOTICE that the attached Motion to Suppress Evidence will be presented to the Honorable Gregory M. Sleet at a time convenient to the Court and counsel.

JOSEPH W. BENSON, P.A.

/s/ Joseph W. Benson
Joseph W. Benson, Esq.
DE Bar No. 196
1701 North Market Street
P.O. Box 248
Wilmington, DE 19899
(302) 656-8811
Attorney for Defendant
Manuel D. Medley

Dated: February 11, 2008

# EXHIBIT A

IN THE
JUSTICE OF THE PEACE COURT # 20
STATE OF DELAWARE

**IN THE MATTER OF:**                                          **Nighttime Search Warrant**

Medley, Manuel bmnh 6/10/70

419 Washington St.
bottom floor, rear apartment
Wilmington, DE 19801

**THE STATE OF DELAWARE TO WIT: DETECTIVES Todd C. Riley and Robert Cunningham,** with the assistance of any police officer or constable or any other necessary or proper person(s) or assistance.

**GREETINGS ;**  Upon the annexed affidavit and application or complaint for a search warrant, as I am satisfied that there is probable cause to believe that certain property , namely: **A SCHEDULE 2  NARCOTIC SUBSTANCE TO WIT : crack cocaine used or intended to be used for the sale of and  distribution of crack cocaine, is being concealed in/or on Manuel Medley bmnh 6/10/70, 419 Washington St. bottom floor, rear apartment Wilmington, DE 19801 described in the annexed affidavit and application or complaint; is being concealed on the premises/person described in the annexed affidavit and application or complaint; and that search of the premises in the nighttime is necessary in order to prevent the escape or removal of the person or thing to be search for;**

**NOW, THEREFORE, YOU ARE HEREBY COMMANDED,** within 3 days the date hereof to search the above-named person, persons, house, conveyance or place  for the property specified in the annexed affidavit and application, and to search any occupant or occupants found in the house, place or conveyance above named for such property, serving this warrant and making the search in the daytime, or in the nighttime if the property to be searched is not a dwelling house, and, if the property papers, articles or things, or any part thereof, be found there, to seize it, giving to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken, or leaving the copy and receipt at the place from which the property was taken and to prepare a signed inventory of the goods seized in the presence of the person from whose possession or premises the property was taken, if they are present, or, if they are not present, in the presence of at least one witness, and to return this warrant, accompanied by written inventory, to the forthwith.

Date this 19 day of October 2007

JUDGE OF THE JUSTICE OF THE PEACE COURT # 20
NEW CASTLE COUNTY, STATE OF DELAWARE

IN THE
JUSTICE OF THE PEACE COURT # 20
STATE OF DELAWARE

IN THE MATTER OF:                                        Affidavit & Application

Medley, Manuel bmnh 6/10/70

419 Washington St.
bottom floor, rear apartment
Wilmington, DE 19801

**STATE OF DELAWARE**
**NEW CASTLE COUNTY SS.**

**BE IT REMEMBERED,** ON THIS 19th DAY OF October 2007

before me, the Honorable Judge _Beet—CJ_
personally appeared **DETECTIVES Todd C. Riley and Robert Cunningham,** being by me
duly sworn do depose and say:

**That the affiant (or Affiants) has (or have) reason to believe and does (or does not believe that in**
**the dwelling known as: on Manuel Medley bmnh 6/10/70, 419 Washington, DE bottom floor, rear**
**apartment Wilmington, DE 19801  described in the annexed affidavit and application or complaint; (s)** that
there has been and/or there is now located and/or concealed certain property in said house, place,
conveyance and/or on the person or persons of the occupants thereof, consisting of property,
papers, articles or things which are instruments of a criminal offense, and/or obtained in the
commission of a crime, and/or designated to be used in the commission of a crime, and not
reasonably calculated to be used for any other purpose and/or the possession of which is unlawful
and, in particular, sale of and distribution of heroin and any drug related paraphernalia commonly
used to process, package, and/or consume drugs, which said property, papers, articles or things
were, are or will be possessed and/or used in violation of Title 16, Section 4751, Delaware Code,
in that possession with intent to deliver schedule 2 narcotic to wit: crack cocaine
And that the facts tending to establish probable cause for believing that the foregoing grounds for
the application exist are as follows:

**PROPERTY TO BE SEIZED**

1. ANY CRACK COCAINE OR AND RELATED PARAPHERNALIA INCLUDING, BUT NOT LIMITED TO, PACKAGING MATERIALS, SCALES AND PIPES.

2. INDICIA OF OCCUPANCY OR RESIDENCY OF THE DESCRIBED PREMISES, INCLUDING, BUT NOT LIMITED TO, UTILITY AND TELEPHONE BILLS, CANCELED ENVELOPES AND KEYS.

3. BOOKS, RECORDS, RECEIPTS, NOTES, LEDGERS AND OTHER PAPERS RELATING TO THE TRANSPORTATION, ORDERING, PURCHASE AND DISTRIBUTION INCLUDING ADDRESSES AND / OR TELEPHONE NUMBERS INDIVIDUALS ASSOCIATED IN THE DRUG TRAFFICKING OPERATION.

4. ANY DOCUMENTS, RECEIPTS, TICKETS OR OTHER PAPERS REFLECTING OR EVIDENCING TRAVEL BY ANY MEANS IN THE FURTHERANCE OF THE DRUG TRAFFICKING ENTERPRISE BETWEEN THE STATES OF DELAWARE AND OTHER STATES.

5. BOOKS, RECORDS, RECEIPTS, BANK STATEMENTS AND RECORDS, MONEY DRAFTS, LETTERS OF CREDIT, CASHIER'S CHECKS RECEIPTS, PASSBOOKS, BANK CHECKS, SAFETY DEPOSIT KEYS, LOAN DOCUMENTS, WIRE TRANSFERS AND OTHER PAPERS OR DOCUMENTS EVIDENCING THE OBTAINING, SECRETING, TRANSFER, LAUNDERING AND INVESTMENT, AND / OR CONCEALMENT OF ANY ASSETS OR MONIES OBTAINED DIRECTLY OR INDIRECTLY FROM VIOLATIONS OF THE CONTROLLED SUBSTANCES LAWS.

6. ANY UNITED STATES CURRENCY IN CLOSE PROXIMITY TO CRACK COCAINE OR PARAPHERNALIA, OR ANY QUANTITIES OF CURRENCY IN EXCESS OF $100.00    OR OTHER VALUABLES FOUND IN EXCESS SUCH AS MULTIPLE VCR'S, CAMERAS, VIDEO TAPE, FILM AND / OR STEREO EQUIPMENT THAT MAY BEEN USED IN LIEU OF CURRENCY TO ATTAIN CONTROLLED SUBSTANCES.

7. ANY RIFLE, PISTOL, SHOTGUN OR ANY DEVICE THAT A SHOT MAY BE DISCHARGED OR ANY WEAPON MANIFESTLY UTILIZED TO PROTECT ILLEGAL DRUGS.

Based upon your affiants training, experience, and participation in other drug investigations, your affiant can state:

**1)** THAT DRUG TRAFFICKERS VERY OFTEN PLACE ASSETS IN NAMES OTHER THAN THEIR OWN TO AVOID DETECTION OF THESE ASSETS BY GOVERNMENT AGENCIES AND EVEN THOUGH THESE ASSETS ARE IN OTHER PERSONS' NAMES, THE DRUG TRAFFICKER ACTUALLY OWN AND CONTINUE USE THESE ASSETS AND EXERCISE DOMINION AND CONTROL OVER THEM ;

**2)** THAT DRUG TRAFFICKERS MUST MAINTAIN ON HAND, LARGE AMOUNTS OF U.S. CURRENCY IN ORDER TO MAINTAIN AND FINANCE THEIR ON-GOING BUSINESS;

**3)** THAT DRUG TRAFFICKERS MAINTAIN BOOKS, RECORDS, RECEIPTS, NOTES, LEDGERS, MONEY ORDERS, AND OTHER PAPERS RELATING TO THE TRANSPORTATION, ORDERING, PURCHASE AND DISTRIBUTION OF ILLEGAL CONTROLLED SUBSTANCES ;

**4)** THAT IT IS COMMON FOR DRUG TRAFFICKERS TO SECRET CONTRABAND , PROCEEDS OF ILLEGAL DRUG SALES AND RECORDS OF DRUG TRANSACTIONS IN SECURE LOCATIONS WITHIN THEIR RESIDENCE AND / OR BUSINESS FOR THEIR READY ACCESS AND TO CONCEAL FROM  LAW ENFORCEMENT OFFICERS ;

**5)** THAT WHEN DRUG TRAFFICKERS AMASS LARGE PROCEEDS FROM THE SALE OF DRUGS, THE DRUG TRAFFICKERS ATTEMPT TO LEGITIMIZE THESE PROFITS. TO DO THIS DRUG TRAFFICKERS UTILIZE DOMESTIC BANKS AND THEIR ATTENDANT SERVICES, SECURITIES, CASHIER CHECKS, MONEY DRAFTS ,LETTERS OF CREDIT, REAL ESTATE AND BUSINESS FRONTS ;

**6)** THAT DRUG TRAFFICKERS COMMONLY MAINTAIN ADDRESSES AND / OR TELEPHONE NUMBERS IN BOOKS OR PAPERS THAT REFLECT PERSONS ASSOCIATED IN DRUG TRAFFICKING AND / OR DISTRIBUTION ORGANIZATIONS ;

**7)** THAT DRUG TRAFFICKERS OFTEN TAKE PAYMENT IN THE FORM OF STOLEN ITEMS SUCH AS TELEVISIONS, STEREOS, VCR'S, GUNS AND / OR THEY OBTAIN THESE ITEMS LEGITIMATELY WITH DRUG PROFITS ;

**8)** THAT YOUR AFFIANTS ARE AWARE THAT COURTS HAVE RECOGNIZED  THAT UNEXPLAINED WEALTH IS PROBATIVE EVIDENCE OF CRIMES MOTIVATED BY GREED, IN PARTICULAR, TRAFFICKING IN CONTROLLED SUBSTANCES.

**9)** THAT YOUR AFFIANTS CAN STATE THAT DRUG TRAFFICKERS ONLY TRANSPORT ENOUGH DRUGS THAT THEY WILL NEED FOR THE SALE. THEY WILL MAINTAIN THE OTHER DRUGS AT A SECURED LOCATION, INCLUDING BUT NOT LIMITED TO THEIR RESIDENCE.

## PROBABLE CAUSE

10) Your affiants can truly state that they are sworn members of the Wilmington
Department of Police currently assigned to the Drug, Organized Crime, and Vice
division and have a combined 24 years of police experience with the department.

11) Your affiants can truly state that Detective Thomas Looney of the Wilmington
Department of Police Drug Unit was contacted by ████████████████ during the
month of January 2007 who advised that a black male known as "Manny" was
selling large amounts of crack cocaine from an apartment building located in the 400
block of N. Jefferson Street located in the City of Wilmington. Said subject (Manny)
was known by Detective Looney as Manuel Medley bmnh 6/10/70 as he was the
target of past title 16 investigations. Further, the apartment building in question was
known to Looney as 400 Jefferson Street, Wilmington, Delaware 19801.

12) Your affiants can truly state that on January 13, 2007 Detectives Looney and Ciber
observed Manuel Medley exit the front door to 400 N. Jefferson Street at
approximately 0100 hours with a set of keys in his hand. Detective Looney (in a
Wilmington Police uniform) approached Medley and asked to speak with same. At
that time he agreed to speak with Detective Looney and also consented to a pat down
of his person for weapons. At that time Detective Ciber felt what was believed to be
numerous large bundles of United States currency in Medley's pants pockets.
Detective Ciber subsequently asked Medley if his person could be searched at which
time he agreed to the search. At that time thirty-one bundles of U.S.C. totaling
$1,130.00 was located in his pockets. Medley was questioned as to the origin of the
money and his employment status. Medley could only state that he was unemployed.
Said money was then seized and a report submitted under 30-07-3535.

13) Your affiants can truly state that during the third week of February 2007, Detectives
Looney and Ciber contacted ████████████████ who advised that "Manny" is
selling crack cocaine from 400 Jefferson Street apartment D. The informant further
advised that "Manny" only utilizes the apartment as a "store front" and arrives at the
apartment to sell crack cocaine after 11 P.M. During conversations with "Manny" he
advised the informant that the drug unit (Wilmington) only works until 12 P.M. In
addition the informant advised that "Manny" employees several unknown black
males and black females who loiter in the 400 block of Jefferson as "look outs." The
"look outs" contact "Manny" by cellular telephone advising same that a customer
was at the front door to the apartment and/or the police were in the area. Prior to
speaking with said informant, an inquiry had been completed via DELJIS on Manuel
Medley which indicated that he resided at 1126 Old Forge Road, New Castle,
Delaware 19720. In addition, a photograph of Medley was also obtained from
DELJIS. The photograph of Medley was presented to the informant who advised the
subject in the photo was "Manny."

14) Your affiants can truly state that during the fourth week of February 2007, Detectives Ciber and Looney met with ▮▮▮▮▮▮▮▮▮▮▮▮(CI) for the purpose of conducting a controlled buy of crack cocaine from Manuel Medley. At that time the photograph of Manuel Medley was presented to the informant. The informant advised the subject in the photograph was "Manny." The CI agreed to attempt the controlled purchase and both themselves and their vehicle were first searched by Detective Ciber for any contraband and currency with negative results. The CI was then provided with departmental issued buy money, serial #'s CC04853687B, DF38253935B, CB43648065C, and CC24346014A. The CI was then directed to respond to 400 North Jefferson Street Wilmington, Delaware and purchase a predetermined amount of crack cocaine. The CI exited their personal vehicle a few blocks away from the target location at approximately 2400hrs. The CI was then observed walking to the target location at which time he/she entered the residence at approximately 0002hrs.

The CI was then observed exiting the target residence at approximately 0003hrs. The CI was then followed back to a predetermined meet location where he/she turned over four (4) pink in color zip lock bags that had an off white rock like substance to Detective Ciber. The substance was later field tested by Detective Ciber and tested positive for the presence of cocaine with a weight of .5 grams. The drugs were later tagged and placed into the evidence locker in accordance with the City of Wilmington Police Department policies and procedures.

The CI was debriefed and advised that he/she walked up to 400 North Jefferson Street and met with Manuel Medley who was standing in the doorway to the residence. Manuel Medley opened the door and let the CI into the residence. Manuel Medley then asked the CI what he/she wanted. The CI asked for the predetermined amount of crack cocaine. Manuel Medley then reached into his pants' pocket and removed a plastic bag that was full of pink in color zip lock bags. Manuel Medley then removed four (4) pink in color zip lock bags and handed same to the CI. The CI then handed Manuel Medley the departmental issued buy money. The CI advised that he/she left the residence and walked back to their vehicle and drove to the predetermined meet location and met Detective Ciber and Looney.

15) Your affiants can truly state that during the third week of February 2007, Detectives Looney and Ciber, along with other members of the Wilmington Department of Police drug unit, responded to the area of 1126 Old Forge Road, New Castle, Delaware 19720 to conduct surveillance. At approximately 2042 hours a subject who was known to be Manuel Medley's brother Corey Medley ███████ exited the dwelling. At approximately 2120 hours Manuel Medley exited his dwelling and entered a silver Infiniti bearing Delaware registration 520253. A DELJIS inquiry on said registration indicated that the vehicle is registered to Corey Medley at 1108 Inverness Circle, New Castle, Delaware 19720. It should be noted Corey Medley was the target of a DEA investigation involving the distribution of cocaine in New Castle County, Delaware. Corey Medley was subsequently arrested on Federal charges of trafficking in cocaine and was sentenced to 87 months in a Federal Prison. The vehicle traveled onto I-95 north bound and traveled into the City of Wilmington. Medley then parked the vehicle in the 400 block of Washington Street at approximately 2134 hours. Manuel Medley then exited the vehicle and responded into 419 Washington Street and remained until 2157 hours. He then responded into 400 N. Jefferson Street at approximately 2202 hours. At that time two black females were observed exiting 400 N. Jefferson Street with one standing south and one standing north in the block. At that time surveillance was terminated.

16) Your affiants can truly state that during the fourth week of February 2007, Detectives Ciber and Looney met with the CI for the purpose of conducting a controlled buy of crack cocaine from Manuel Medley. The CI agreed to attempt the controlled purchase and both themselves and their vehicle were first searched by Detective Ciber for any contraband and currency with negative results. The CI was then provided with departmental issued buy money, serial #'s GB36876867A, CB34083738B, GC27419795A, and GC12561301A. The CI was then directed to respond to 400 North Jefferson Street Wilmington, Delaware and purchase a predetermined amount of crack cocaine.
The CI exited their personal vehicle a few blocks away from the target location at approximately 2317hrs. The CI was then observed walking to the target location at which time he/she entered the residence at approximately 2319hrs.
The CI was then observed exiting the target residence at approximately 2320hrs. The CI was then followed back to a predetermined meet location where he/she turned over five (5) pink in color zip lock bags that had an off white rock like substance to Detective Looney. The substance was later field tested by Detective Looney and tested positive for the presence of cocaine with a weight of .8 grams. The drugs were later tagged and placed into the evidence locker in accordance with the City of Wilmington Police Department policies and procedures.
The CI was debriefed and advised that he/she walked up to 400 North Jefferson Street and met with an unknown black male who was standing outside the doorway. The unknown black male opened the door and let the CI into the vestibule area. The unknown black male then called the target Manuel Medley on the phone. The CI then observed Manuel Medley exit from the second floor front apartment and walk down the steps. Manuel Medley then asked the CI what he/she wanted. The CI asked for the predetermined amount of crack cocaine. Manuel Medley then reached into his

pants pocket and removed a plastic bag that was full of pink in color zip lock bags. Manuel Medley then removed five (5) pink in color zip lock bags and handed same to the CI. The CI then handed Manuel Medley the departmental issued buy money. The CI then advised that he/she left the residence, walked back to their vehicle, and drove to the predetermined meet location and met these officers.

17)  Your affiants can truly state during the third week of February 2007, Detective Cunningham spoke with ████████████████████ who advised that they purchased crack cocaine from "Manny" on several occasions at 400 N. Jefferson Street. The informant advised that "Manny" operates from apartment D and strictly works the night shift from 11 P.M. until 4 or 5 A.M. The informant also advised that a black male subject by the name of "JD" who is described as being in his mid-twenties, 5'8" medium to heavy build works the "day work" shift from 10 A.M. until the early evening for "Manny" and operates from apartment E located in the same building. The informant further advised that both "Manny" and "JD" employ "look outs" in the 400 block of N. Jefferson Street.

18)  Your affiants can truly state that on March 15, 2007, Detectives Looney and Ciber met with the Undercover State Police Detective for the purpose of conducting a controlled buy of crack cocaine from Manuel Medley. The Undercover State Police Detective was then provided with departmental issued buy money, serial #'s GJ60162745B, BF78197680E. The Undercover State Police Detective was then directed to 400 North Jefferson Street Apartment D Wilmington, Delaware in order to purchase a predetermined amount of crack cocaine.
The Undercover State Police Detective exited his undercover vehicle a few blocks away from the target location at approximately 2315hrs. The Undercover State Police Detective was then observed walking to the target location at which time they entered the residence at approximately 2317hrs. The Undercover State Police Detective was then observed exiting the target residence at approximately 2320hrs. The Undercover State Police Detective was then followed back to a predetermined meet location where they turned over five (5) pink in color zip lock bags that had an off white rock like substance to Detective Looney. The substance was later field tested by Detective Looney and tested positive for the presence of cocaine with a weight of .5 grams. The drugs were later tagged and placed into the evidence locker in accordance with the City of Wilmington Police Department policies and procedures.
The Undercover State Police Detective was debriefed and advised that they walked to 400 North Jefferson Street and met with a black male who asked what they wanted. The Undercover State Police Detective then advised they were looking for "Manny." The unknown black male then stated his name was "Harv" and called "Manny" on the phone. The black male, "Harv," then walked the Undercover State Police Detective inside of the target residence. Once inside the Undercover State Police Detective observed "Manny" come from the second floor front and walked down the steps. The Undercover State Police Detective asked for the predetermined amount of crack cocaine. Manuel Medley then reached into his pants' pocket and removed a plastic bag that was full of pink in color zip lock bags. Manuel Medley

then removed five (5) pink in color zip lock bags and handed same to the Undercover
State Police Detective.  The Undercover State Police Detective then handed Manuel
Medley the departmental issued buy money. "Manny" then gave the Undercover
State Police detective his cell phone number which was 302-250-2099.  The
Undercover State Police Detective then advised that they left the residence, walked
back to their vehicle, drove to the predetermined meet location, and met these
officers.

19) Your affiants can truly state that on March 27, 2007, Detectives Looney and Ciber
met with an Undercover State Police Detective for the purpose of conducting a
controlled buy of crack cocaine from Manuel Medley. The Undercover State Police
Detective was then provided with departmental issued buy money, serial #'s
EB64488866F, CF01554089B. The Undercover State Police Detective then called
"Manny" on his cell phone 302-250-2099. "Manny" answered the cell phone and
advised the Undercover State Police Detective he was up and to come over to
Jefferson Street. The Undercover State Police Detective then responded to 400 North
Jefferson Street apartment D Wilmington, Delaware in order to purchase a
predetermined amount of crack cocaine.
The Undercover State Police Detective exited his undercover vehicle a few blocks
away from the target location at approximately 2307hrs. The Undercover State
Police Detective was then observed walking to the target location at which time they
met a black male out front and entered the residence at approximately 2308hrs. The
Undercover State Police Detective was then observed exiting the target residence at
approximately 2310hrs.
The Undercover State Police Detective was then followed back to a predetermined
meet location where they turned over three (3) blue in color zip lock bags and two
(2) green in color zip lock bags that had an off white rock like substance to Detective
Looney. The substance was later field tested by Detective Looney and tested positive
for the presence of cocaine with a weight of 1.0 gram. The drugs were later tagged
and placed into the evidence locker in accordance with the City of Wilmington
Police Department policies and procedures.
The Undercover State Police Detective was debriefed and advised that they walked
to 400 North Jefferson Street and met up with "Manny" as he was coming out of 402
North Jefferson Street. "Manny" and the Undercover State Police Detective then
walked inside of 400 N. Jefferson St. Once inside, the Undercover State Police
Detective asked for the predetermined amount of crack cocaine. Manuel Medley then
walked up the steps to the second floor and responded to the front apartment. Manuel
Medley then returned with three (3) blue in color zip lock bags and two (2) green in
color zip lock bags and handed same to the Undercover State Police Detective.  The
Undercover State Police Detective then handed Manuel Medley the departmental
issued buy money. The Undercover State Police Detective advised that they left the
residence, walked back to their vehicle, and drove to the predetermined meet
location and met these officers.

20) Your affiants can truly state that during the first week of April 2007, Detectives Looney and Ciber and other members of the Wilmington Department of Police drug unit responded to 1126 Old Forge Road New Castle, Delaware to conduct surveillance. Upon arrival the silver Infinity Q45 bearing Delaware registration 520253 was observed parked near the dwelling. At approximately 2010 hours, Manuel Medley was observed exiting the dwelling and entering the vehicle. The vehicle traveled into the development of Woodborne and parked in front of a dwelling located on Wildfire Lane at approximately 2014 hours. Medley subsequently exited the vehicle and responded into an unknown dwelling located in the block. At approximately 2042 hours, Medley exited the dwelling and entered the Q45. The vehicle then traveled back to 1126 Old Forge Road where Medley entered the home. At approximately 2108 hours, the Undercover State Police Detective contacted Medley via cellular phone and inquired if he (Medley) was working. At that time Medley advised he was not going to be working for a day or two.

21) Your affiants can truly state that on April 6, 2007, Detective Looney and Ciber met with the Undercover State Police Detective for the purpose of conducting a controlled buy of crack cocaine from Manuel Medley. The Undercover State Police Detective was then provided with departmental issued buy money, serial #'s EB88880245H, EA77243416E. The Undercover State Police Detective then called "Manny" on his cell phone 302-250-2099. "Manny" answered the cell phone and advised the Undercover State Police Detective to "come in, no problems". The Undercover State Police Detective then responded to 400 North Jefferson Street, Apartment D Wilmington, Delaware in order to purchase a predetermined amount of crack cocaine.
The Undercover State Police Detective exited his undercover vehicle a few blocks away from the target location at approximately 2314hrs. The Undercover State Police Detective then called "Manny" again and advised he was in the area. "Manny" advised them to "come on in." The Undercover State Police Detective was then observed walking to the target location. The Undercover State Police Detective then had a conversation with someone on the second floor and entered the residence at approximately 2317hrs. The Undercover State Police Detective was then observed exiting the target residence at approximately 2318hrs.
The Undercover State Police Detective was then followed back to a predetermined meet location where they turned over five (5) green in color zip lock bags that had an off white rock like substance to Detective Looney. The substance was later field tested by Detective Looney and tested positive for the presence of cocaine with a weight of .7 grams. The drugs were later tagged and placed into the evidence locker in accordance with the City of Wilmington Police Department policies and procedures.
The Undercover State Police Detective was debriefed and advised that they walked to 400 North Jefferson Street and spoke to "Manny" who was standing on the second floor landing of the fire escape. "Manny" then asked the Undercover State Police Detective what they needed. The Undercover State Police Detective then asked for a predetermined amount of crack cocaine. "Manny" then walked into the second floor front apartment as the Undercover State Police Detective entered the target

residence. Manuel Medley walked down the steps from the second floor. Manuel Medley then handed the Undercover State Police Detective five (5) green in color zip lock bags that had an off white rock like substance. The Undercover State Police Detective then handed Manuel Medley the departmental issued buy money. The Undercover State Police Detective then advised that they left the residence, walked back to their vehicle, drove to the predetermined meet location and, met Detective Ciber and Looney.

22) Your affiants can truly state that on April 16, 2007, Detectives Looney and Ciber met with ███████████████████ for the purpose of attempting a controlled purchase of crack cocaine from Manuel Medley at 400 N. Jefferson Street, Wilmington, Delaware.  At approximately 2045 hours, ████████████████ responded to 400 N. Jefferson Street apartment D. At that time the informant received no response at the door and exited the apartment.  Once on the sidewalk, the informant was approached by an unknown black male who asked the informant what they were looking for.  The informant advised they were trying to find "Manny" at which time the unknown black male advised "Manny" does not come around until 11 P.M.

23) Your affiants can truly state that Detective Looney spoke with ███████████ ██████████████████ reference to Manual Medley. The informant advised that he/she has been buying crack cocaine from Medley for approximately 9 years and has spent approximately $40,000.00 during that time.  They further advised that Medley does not arrive at the apartment located at 4th and Jefferson St. until 11 or 12 P.M.  The informant also stated that "Manny" has not been at the apartment (D) for approximately 1 to 1 ½ months and believes he was in Las Vegas for part of that time period.  While Medley was on "vacation" the informant advised that "JD" is conducting business at the Apartment.

24) Your affiants can truly state that during the fifth week of June 2007, Detectives Looney and Pfaff met with ████████████████████ for the purpose of conducting a controlled buy of crack cocaine from Manuel Medley at 400 Jefferson Street apartment D.  The informant and vehicle were first searched by Detective Looney for any contraband and currency with negative results. The CI was then provided with departmental issued buy money, serial #'s GL03634976B and GC58345525A.  The CI was then directed to respond to 400 North Jefferson St. Wilmington, Delaware and purchase a predetermined amount of crack cocaine. The CI exited their personal vehicle a few blocks away from the target location at approximately 2256hrs. The CI was then observed walking to the target location at which time he/she entered the residence at approximately 2257hrs. The CI was then observed exiting the target residence at approximately 2258hrs.
The CI was then followed back to a predetermined meet location where he/she turned over four (4) blue in color zip lock bags that had an off white rock like substance to Detective Looney. The substance was later field tested by Detective Looney and tested positive for the presence of cocaine with a weight of .5 grams.

The drugs were later tagged and placed into the evidence locker in accordance with the City of Wilmington Police Department policies and procedures.

The CI was debriefed and advised that he/she walked to 400 North Jefferson St. and met with "JD" who was described as being bmnh 5'8" tall, with a beard wearing a blue shirt and jeans at apartment D.  "JD" then asked the informant what he/she wanted. The CI asked for the predetermined amount of crack cocaine. "JD" then reached into his pants pocket and removed a plastic bag that was full of blue in color zip lock bags.  "JD" then removed four (4) blue in color zip lock bags and handed same to the informant.  The informant then handed "JD" the departmental issued buy money.    The informant advised that he/she left the residence, walked back to their vehicle, drove to the predetermined meet location, and met these officers.

25)  Your affiants can truly state that Detectives Cunningham and Riley spoke with ███████ ████████████████████ on the 2nd of August 2007.  The informant advised that "Manny" and "JD" are selling crack cocaine from the apartment building located at 400 N. Jefferson Street.  "JD" is known to reside in apartment E and sells crack cocaine during the daytime hours. "Manny" is known to sell crack cocaine from apartment D and works during the evening hours after, 11 P.M.  During this investigation Gregory A. Ward ███████████ was developed as possibly being "JD." A photograph of Ward was presented to the confidential informant who advised the subject depicted in the photograph was "JD." The informant further advised that the pair employ other subjects who sell crack cocaine on the street in the area.

26)  Your affiants can truly state that during the week of August 12-18, 2007, Detective Popp of the Delaware State Police obtained information from ███████████ ███████████ who had personal knowledge of a subject at this time only known as "JD" who was selling crack cocaine. The CI advised they had purchased crack cocaine from "JD" in the past and was knowledgeable reference the locations and vehicles used during the distribution of crack cocaine by "JD." The CI has first hand knowledge of how "JD" operates his illegal drug distribution business and places "JD" hides his crack cocaine. The CI has first hand knowledge of how "JD" uses runners and subjects who look out for the police during the hours of operation.

27)  Your affiants can truly state that during the week of August 12th, 2007 through August 18, 2007, Detective Popp met with the CI in reference to conducting a controlled purchase of crack cocaine from JD. The CI, in Detective Popp's presence, arranged the purchase of crack cocaine from JD and responded to the residence occupied by JD, 400 N. Jefferson St. apt E. Prior to responding to the scheduled delivery, Detective Popp searched the CI making sure they were free from any controlled substances and/or contraband. Detective Popp then provided the CI with an amount of DSP Official Funds (serial #'s listed at the end of the report) with which to purchase the crack cocaine. The CI was followed to the residence of JD and remained under surveillance at all times. After meeting with JD and purchasing the crack cocaine, the CI was followed to a predetermined location where Detective Popp took custody of the purchased crack cocaine. At this location, the CI was again searched and found to be free of any controlled substances and/or contraband. Unit

members maintained visual surveillance on the residence of JD and observed him as he exited the residence and made contact with the CI. Both subjects entered into the residence where the delivery was conducted. The CI was observed exiting the residence within 1 minute. Surveillance remained at the residence and observed additional subjects responding to the residence. The same routine was observed with each individual. The unknown responding individual would make contact with subjects outside the residence, these were the drug runners, and then conduct from Detective Popp's experience, a hand to hand drug transaction.

At Troop 2, Detective Popp processed the suspected crack cocaine purchased by the CI. The suspected crack cocaine was field tested using Narcotest #13. The test kit produced a blue color signifying a positive reading for cocaine. The cocaine was weighed which resulted in a weight of 1.6 grams. The evidence was logged into the evidence locker at Troop 2 pending further investigation.

28) Your affiants can truly state on ███████ September 07, ██████ ████████████████████████████████████████ advised "JD" (who is also known as "crab") resides at 400 Jefferson Street in an apartment with a front porch (E) and sells crack cocaine during the daytime. The subject also advised that "Manny" sells at night from a second floor apartment (D) in the building but resides in New Castle past the Wilton (1126 Old Forge Rd). The subject further advised "Manny" keeps his money and drugs in his home in New Castle as he (Manny) was a victim of a home invasion where the suspects removed $20,000 from the dwelling. "Manny" is also known to drive an Infinity Q45 which he drives into the City of Wilmington every night and parks same in the 400 block of Washington Street. He then walks to 400 Jefferson Street and opens up "shop." "Manny" is known to work a strict shift of 10 P.M until 4:30 A. M. and was heard "preaching" to the "young drug dealers" that they must treat selling drugs like a business and must have set hours and have employees.

29) Your affiants can truly state that during the fourth week of September 2007, Detective Riley was contacted by Detective Orzechowski of the New Castle County Police Department. They informed same that they had received information from ███ ██████████ regarding 'JD' and 'Manny' They further explained that 'JD' was positively identified as Gregory Ward ████████ and 'Manny' was identified as Manuel Medley 06-10-70 by his informant. The confidential informant has purchased crack cocaine from Medley and Ward on several occasions. The informant recently brought another individual to Ward's apartment, 400 N. Jefferson St. apt E for the purpose of selling a handgun. The informant's acquaintance sold a handgun to Ward for $250.00 United States Currency. Detective Orzechowski subsequently drove the informant to the area where he pointed out 400 N. Jefferson St. apt E as being Ward's.

00000038

30) Your affiants can truly state that during the first week of October 2007, Detective Riley spoke with ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The informant advised this detective that Medley sells crack cocaine out of 400 N. Jefferson St. apt D during the nighttime hours; between 11:00 PM and 4:00 AM. The informant stated that Medley does not keep his illegal drugs at the apartment when he is not there, however, every night he brings the drugs and sells and cooks same inside of apartment D. The informant explained that Ward would sell during the day time hours. Inside of Ward's apartment, apt E, they have seen an assault rifle in the kitchen, a .38 caliber handgun under the couch, and a .45 caliber and .9mm handgun under the bed in Ward's apartment. The informant also advised that customers could contact Ward via cellular phone #302-543-2425 and place their order.

31) Your affiants can truly state that during the first week of October 2007, Detectives Cunningham and Riley met with ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ for the purpose of conducting a controlled buy of crack cocaine from Gregory A. Ward aka "JD" at 400 Jefferson Street apartment E. The informant and vehicle were first searched by these Detectives for any contraband and currency with negative results. The informant was then provided with departmental issued buy money, serial #'s CD38224619A, GG25578812A and EB85509224A. The confidential informant then contacted "JD" via cellular telephone at 543-2425 and ordered a predetermined amount of crack cocaine then advising same they (informant) was on their way. The informant drove their personal vehicle to the area and exited same a few blocks away from the target location at approximately 2335 hrs. The informant then walked to the target location at which time he/she entered the residence at approximately 2336hrs. The informant was then observed exiting the target residence at approximately 2337hrs and responding to their vehicle. Prior to entering the vehicle, the informant walked back to the sidewalk area in front of 400 N. Jefferson Street and held a conversation with a black male subject on the porch to apartment E. After approximately two minutes the informant walk back to their vehicle and pulled off. The informant was then followed back to a predetermined meet location where he/she turned over three (3) yellow in color zip lock bags that had an off white rock like substance to these detectives. The substance was later field tested by Detective Cunningham and tested positive for the presence of cocaine with a weight of .6 grams. The drugs were later tagged and placed into the evidence locker in accordance with the City of Wilmington Police Department policies and procedures. The CI was debriefed and advised that he/she walked up to 400 North Jefferson Street and responded to apartment D. Upon knocking on the door a black male subject described as being 5'09" in his mid fifties, slim build exited the apartment and asked what they needed. The informant asked where "JD" was at which time the black male subject replied "he is sleeping, I have the pack". The informant then asked for the predetermined amount of crack cocaine from the subject who then reached into his pants pocket and removed a plastic bag that was full of yellow in color zip lock bags. The informant then handed the subject the departmental issued buy money. The informant advised that he/she left the residence and walked back to their vehicle when they noticed "JD" on the porch. The informant responded back to

the sidewalk area and held a brief conversation with "JD" in reference to being told he was sleeping. The informant then responded back to their vehicle and drove to the predetermined meet location and met these officers.

32) Your affiants can truly state that state that during the first week of October 2007 Detectives Cunningham and Riley responded to the 400 block of Washington Street at approximately 2230 hours and observed the silver Infiniti Q45 bearing Delaware registration 520253 operated by Manual Medley parked and unoccupied. These Detectives then met with ███████████████████ for the purpose of conducting a controlled buy of crack cocaine from Manual Medley at 400 Jefferson Street apartment D. The informant and vehicle were first searched by these Detectives for any contraband and currency with negative results. The informant was then provided with departmental issued buy money, serial #'s CK93461247A and C32254839B. The informant drove their personal vehicle to the area and exited same a few blocks away from the target location at approximately 2315 hrs. The informant then walked to the target location at which time he/she entered the residence at approximately 2316hrs. The informant was then observed exiting the target residence at approximately 2317hrs and responding to their vehicle. The informant was then followed back to a predetermined meet location where he/she turned over four (4) yellow in color zip lock bags that had an off white rock like substance to these detectives. The substance was later field tested by Detective Cunningham and tested positive for the presence of cocaine with a weight .4 grams. The drugs were later tagged and placed into the evidence locker in accordance with the City of Wilmington Police Department policies and procedures.
The CI was debriefed and advised that he/she walked up to 400 North Jefferson Street where Manual Medley was observed standing on the front porch area to the apartment (D). Upon responding into the hallway of the building Medley exited apartment D and asked the informant what they needed. The informant then asked for the predetermined amount of crack cocaine from Medley who then reached into his pants pocket and removed a plastic bag that was full of yellow in color zip lock bags. The informant then handed the subject the departmental issued buy money. The informant then advised that he/she left the residence and walked back to their vehicle and drove to the predetermined meet location and met these officers.

33) Your affiants can truly state that ████████████████ October 2007. ████████████████████████████████████████████████████████████ This individual was an admitted active member of Medley's drug organization. The subject advised that Medley will drive the Infiniti Q45 bearing DE 520253 into the city of Wilmington, from his house in the county, at approximately 2130 hrs (9:30 PM). First, Medley will circle the area of 4th and Jefferson St., looking for police. Medley will then park his vehicle in the 400 block of Washington St. and enter 419 Washington St. first floor, back apartment. However, the informant stated that Medley had been recently looking into occupying a second floor apartment due to recent burglaries. The informant explained that this residence is where Medley packages, cooks, and keeps his cache of illegal drugs. The informant has been inside of this apartment on

several occasions and has observed Medley cooking and packaging crack cocaine. The informant has also received crack cocaine from Medley in this apartment for distribution. Medley will then have a 'lookout' carry the amount of illegal drugs that will be sold that night to 400 N. Jefferson St. apt. D. Once he arrives at 400 N. Jefferson St. apt. D, Medley will begin to sell 'street level' crack cocaine. Occasionally, a customer will contact Medley in reference to buying a larger amount of crack cocaine. Medley will then walk back to 419 Washington St. and conduct the transaction inside of this apartment. The informant further advised that when Medley has a substantial amount of United States Currency on his person, he will respond to the Infiniti and place same into the trunk of the vehicle. Medley will station 'lookouts' throughout the 400 blocks of Washington and Jefferson St. for police. The subject further stated that he believed Medley was conducting home repairs on 1126 Old Forge Rd in an effort to sell same.

34) Your affiants can truly state that on October 16, 2007 at approximately 2150 hours, Medley was observed parking his Infiniti Q45 in the 400 block of Washington St. and entering 419 Washington St. A few minutes later Medley emerged from 419 Washington St. with an unknown black female and began walking towards the 400 block of Jefferson St. Detective Emory continued surveillance on the 400 block of Washington St. Detective Emory observed 'lookouts' checking on the status of the Infiniti Q45 after unknown subjects ventured close to same.

35) Your affiants can truly state that during the month of October 2007, surveillance was conducted on 1126 Old Forge Rd. on several occasions. No vehicles were observed in the driveway and the residence appeared in darkness. Neither Medley nor his vehicles were observed at this location at any time, however, the owner of the property remains Medley, Melvina. Your affiants believe Medley may have changed his residence due to the fact that he was the victim of a home invasion at 1126 Old Forge Rd.

35) Your affiants can truly state that on October 17, 2007 at approximately 0343 hours, Medley was observed walking back to the Infiniti Q45 and entering same. Medley was then covertly followed to 1126 Old Forge Road where he retrieved mail for the residence at approximately 0400 hours. Medley was then followed to the Apple Chase apartments located at 1000 Thornhill Dr. where he exited his vehicle and entered the apartment building at approximately 0415 hours. Surveillance was terminated at approximately 0500 hours.

36) Your affiants can truly state that on October 18, 2007, Detective Dan Silva received a subpoena from Deputy Attorney General Brian Robertson for a list of tenants occupying the 700, 900, and 1000 buildings of Apple Chase apartments. The subpoena was served to the staff of Apple Chase apartments at approximately 1800 hours. Melvina Medley returned as being the occupant of 1009 Thornhill Dr. This is the same building that Medley was observed entering. Detective Silva also observed Medley's Infiniti Q45 parked in front of this building.

37) Your affiants can truly state that on October 18, 2007, Detective Riley and Cunningham, conducted surveillance on the 400 block of Washington St. At approximately 2200 hours, Medley was observed exiting the front door of 419 Washington St. with another unknown, black male. Both subjects walked southbound in the block, then westbound on W. 4th St. towards the 400 block of Jefferson St. Surveillance was terminated at this time.

38) Your affiants can truly state that on October 18, 2007, Detective Riley and Cunningham, met with ███████████████ for the purpose of securing a controlled purchase of crack cocaine from Manuel Medley. The informant was first searched for any contraband or United States Currency with negative results. The informant was supplied with departmental 'buy' money (serial numbers recorded). The informant was then followed to the 400 block of Jefferson St. The informant walked to the front door of 400 N. Jefferson St. and entered same at approximately 2240 hours. At approximately 2242 hours the informant exited the building, was followed to the predetermined meet location, and met with these detectives. The informant advised that they entered 400 N. Jefferson and were let into apt. D where they met with Medley. The informant advised that they would like to purchase an amount of crack cocaine. Medley retrieved a sandwich bag full of pink tinted zip lock bags, each containing an off-white in color chunky substance, and handed an amount to the informant. The informant handed Medley the 'buy' money in exchange. The informant then exited the building and met with these detectives where they handed over the pink tinted zip lock bags containing the off-white in color chunky substance which later field tested positive for crack cocaine. The informant was researched for contraband and United States Currency with negative results.

39) Your affiants can truly state that a nighttime search warrant is being requested on the aforementioned locations, i.e. 400 N. Jefferson Street apartment D, Wilmington, Delaware 19801, 419 Washington St. bottom floor, rear apartment Wilmington, DE 19801, 1126 Old Forge Road New Castle Delaware 19720, and 1009 Thornhill Dr. Apple Chase apartments Newark, DE 19702 as a nexus exists between each location due to the on going criminal organization formed by Medley and Ward. Further, daytime purchases of crack cocaine were attempted at 400 N. Jefferson Street apartment D from Manuel Medley and contact was not made with same. Due to the nexus between Manuel Medley in 400 N. Jefferson St apartment D and 419 Washington St. bottom floor, rear apartment, a nighttime search is required to be conducted simultaneously on both locations to prevent the removal or destruction of evidence. Also, a nighttime search of Manuel Medley's residence at 1126 Old Forge Road New Castle, Delaware and 1009 Thornhill Dr. Apple Chase apartments Newark, Delaware 19702 is requested to prevent the removal or destruction of evidence by his brother Corey Medley, his wife Melvina Medley, or other person(s) not yet identified during this investigation. As outlined in the body of this affidavit, Medley employees "look outs" on the street with cellular telephones who would be able to contact person(s) to remove or destroy evidence from Old Forge Road or Thornhill Dr.

40) Wherefore, these affiants pray that a nighttime search warrant may be issued authorizing a search of:

1) 419 Washington St. bottom floor, rear apartment Wilmington, DE 19801

00000043

SWORN TO AND SUBSCRIBED THIS 19th DAY OF October 2007

AFFIANT: _____                    DATE:  19 October 2007
                    Todd C. Riley

AFFIANT: _____                    DATE:  19 October 2007
                    Robert Cunningham

_____                             DATE: 19 October 2007
JUDGE OF THE JUSTICE OF THE PEACE COURT #20,
NEW CASTLE COUNTY,
STATE OF DELAWARE

00000044

# EXHIBIT B

NOV 19 2007

IN THE
JUSTICE OF THE PEACE COURT # 20
STATE OF DELAWARE

**IN THE MATTER OF:**                                    **Nighttime Search Warrant**

419 Washington St.
Apartment #4
Wilmington, DE 19801

**THE STATE OF DELAWARE TO WIT: DETECTIVES** Todd C. Riley and Robert Cunningham, with the
assistance of any police officer or constable or any other necessary or proper person(s) or assistance.

     **GREETINGS ;** Upon the annexed affidavit and application or complaint for a search warrant, as I am
satisfied that there is probable cause to believe that certain property , namely: **A SCHEDULE 2 NARCOTIC
SUBSTANCE TO WIT : crack cocaine used or intended to be used for the sale of and distribution of crack
cocaine, is being concealed in/or on 419 Washington St. apartment #4 Wilmington, DE described in the
annexed affidavit and application or complaint; is being concealed on the premises/person described in the
annexed affidavit and application or complaint; and that search of the premises in the nighttime is necessary
in order to prevent the escape or removal of the person or thing to be search for;**

**NOW, THEREFORE, YOU ARE HEREBY COMMANDED,** within 3 days the date hereof to search the above-
named person, persons, house, conveyance or place  for the property specified in the annexed affidavit and
application, and to search any occupant or occupants found in the house, place or conveyance above named for such
property, serving this warrant and making the search in the daytime, or in the nighttime if the property to be searched
is not a dwelling house, and, if the property papers, articles or things, or any part thereof, be found there, to seize it,
giving to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt
for the property taken, or leaving the copy and receipt at the place from which the property was taken and to prepare
a signed inventory of the goods seized in the presence of the person from whose possession or premises the property
was taken, if they are present, or, if they are not present, in the presence of at least one witness, and to return this
warrant, accompanied by written inventory, to the forthwith.

Date this 19 day of October 2007

JUDGE OF THE JUSTICE OF THE PEACE COURT # 20
NEW CASTLE COUNTY, STATE OF DELAWARE

00000001

**IN THE**
**JUSTICE OF THE PEACE COURT # 20**
**STATE OF DELAWARE**

IN THE MATTER OF:                                      Affidavit & Application

419 Washington St.
Apartment #4
Wilmington, DE 19801

**STATE OF DELAWARE**
**NEW CASTLE COUNTY SS.**

**BE IT REMEMBERED,** ON THIS 19th DAY OF October 2007

before me, the Honorable Judge   ROBERT ARMSTRONG
personally appeared **DETECTIVES Todd C. Riley and Robert Cunningham,** being by me
duly sworn do depose and say:
That the affiant (or Affiants) has (or have) reason to believe and does (or do) believe that in
the dwelling known as: on Manuel Medley bmnh 6/10/70, 400 N. Jefferson Street apartment D,
Wilmington, DE, 419 Washington St. bottom floor, rear apartment Wilmington, DE 19801, 1126 Old Forge
Road, New Castle DE 19720, 1009 Thornhill Dr. Apple Chase apartments Newark, DE 19702, and a 2002
Infinity Q45 silver in color, Delaware registration 520253 VIN JNKBF01AX2M006512  described in the
annexed affidavit and application or complaint;  (s) that there has been and/or there is now located
and/or concealed certain property in said house, place, conveyance and/or on the person or
persons of the occupants thereof, consisting of property, papers, articles or things which are
instruments of a criminal offense, and/or obtained in the commission of a crime, and/or
designated to be used in the commission of a crime, and not reasonably calculated to be used for
any other purpose and/or the possession of which is unlawful and, in particular, sale of and
distribution of heroin and any drug related paraphernalia commonly used to process, package,
and/or consume drugs, which said property, papers, articles or things were, are or will be
possessed and/or used in violation of Title 16, Section 4751, Delaware Code, in that possession
with intent to deliver schedule 2 narcotic to wit: crack cocaine
And that the facts tending to establish probable cause for believing that the foregoing grounds for
the application exist are as follows:

00000002

**PROPERTY TO BE SEIZED**

1. ANY CRACK COCAINE OR AND RELATED PARAPHERNALIA INCLUDING, BUT NOT LIMITED TO, PACKAGING MATERIALS, SCALES AND PIPES.

2. INDICIA OF OCCUPANCY OR RESIDENCY OF THE DESCRIBED PREMISES, INCLUDING, BUT NOT LIMITED TO, UTILITY AND TELEPHONE BILLS, CANCELED ENVELOPES AND KEYS.

3. BOOKS, RECORDS, RECEIPTS, NOTES, LEDGERS AND OTHER PAPERS RELATING TO THE TRANSPORTATION, ORDERING, PURCHASE AND DISTRIBUTION INCLUDING ADDRESSES AND / OR TELEPHONE NUMBERS INDIVIDUALS ASSOCIATED IN THE DRUG TRAFFICKING OPERATION.

4. ANY DOCUMENTS, RECEIPTS, TICKETS OR OTHER PAPERS REFLECTING OR EVIDENCING TRAVEL BY ANY MEANS IN THE FURTHERANCE OF THE DRUG TRAFFICKING ENTERPRISE BETWEEN THE STATES OF DELAWARE AND OTHER STATES.

5. BOOKS, RECORDS, RECEIPTS, BANK STATEMENTS AND RECORDS, MONEY DRAFTS, LETTERS OF CREDIT, CASHIER'S CHECKS RECEIPTS, PASSBOOKS, BANK CHECKS, SAFETY DEPOSIT KEYS, LOAN DOCUMENTS, WIRE TRANSFERS AND OTHER PAPERS OR DOCUMENTS EVIDENCING THE OBTAINING, SECRETING, TRANSFER, LAUNDERING AND INVESTMENT, AND / OR CONCEALMENT OF ANY ASSETS OR MONIES OBTAINED DIRECTLY OR INDIRECTLY FROM VIOLATIONS OF THE CONTROLLED SUBSTANCES LAWS.

6. ANY UNITED STATES CURRENCY IN CLOSE PROXIMITY TO CRACK COCAINE OR PARAPHERNALIA, OR ANY QUANTITIES OF CURRENCY IN EXCESS OF $100.00   OR OTHER VALUABLES FOUND IN EXCESS SUCH AS MULTIPLE VCR'S, CAMERAS, VIDEO TAPE, FILM AND / OR STEREO EQUIPMENT THAT MAY BEEN USED IN LIEU OF CURRENCY TO ATTAIN CONTROLLED SUBSTANCES.

7. ANY RIFLE, PISTOL, SHOTGUN OR ANY DEVICE THAT A SHOT MAY BE DISCHARGED OR ANY WEAPON MANIFESTLY UTILIZED TO PROTECT ILLEGAL DRUGS.

Based upon your affiants training, experience, and participation in other drug investigations, your affiant can state:

    **1)**  THAT DRUG TRAFFICKERS VERY OFTEN PLACE ASSETS IN NAMES OTHER THAN THEIR OWN TO AVOID DETECTION OF THESE ASSETS BY GOVERNMENT AGENCIES AND EVEN THOUGH THESE ASSETS ARE IN OTHER PERSONS' NAMES, THE DRUG TRAFFICKER ACTUALLY OWN AND CONTINUE USE THESE ASSETS AND EXERCISE DOMINION AND CONTROL OVER THEM ;

    **2)**  THAT DRUG TRAFFICKERS MUST MAINTAIN ON HAND, LARGE AMOUNTS OF U.S. CURRENCY IN ORDER TO MAINTAIN AND FINANCE THEIR ON-GOING BUSINESS;

    **3)**  THAT DRUG TRAFFICKERS MAINTAIN BOOKS, RECORDS, RECEIPTS, NOTES, LEDGERS, MONEY ORDERS, AND OTHER PAPERS RELATING TO THE TRANSPORTATION, ORDERING, PURCHASE AND DISTRIBUTION OF ILLEGAL CONTROLLED SUBSTANCES ;

    **4)**  THAT IT IS COMMON FOR DRUG TRAFFICKERS TO SECRET CONTRABAND , PROCEEDS OF ILLEGAL DRUG SALES AND RECORDS OF DRUG TRANSACTIONS IN SECURE LOCATIONS WITHIN THEIR RESIDENCE AND / OR BUSINESS FOR THEIR READY ACCESS AND TO CONCEAL FROM  LAW ENFORCEMENT OFFICERS ;

    **5)**  THAT WHEN DRUG TRAFFICKERS AMASS LARGE PROCEEDS FROM THE SALE OF DRUGS, THE DRUG TRAFFICKERS ATTEMPT TO LEGITIMIZE THESE PROFITS. TO DO THIS DRUG TRAFFICKERS UTILIZE DOMESTIC BANKS AND THEIR ATTENDANT SERVICES, SECURITIES, CASHIER CHECKS, MONEY DRAFTS ,LETTERS OF CREDIT, REAL ESTATE AND BUSINESS FRONTS ;

    **6)**  THAT DRUG TRAFFICKERS COMMONLY MAINTAIN ADDRESSES AND / OR TELEPHONE NUMBERS IN BOOKS OR PAPERS THAT REFLECT PERSONS ASSOCIATED IN DRUG TRAFFICKING AND / OR DISTRIBUTION ORGANIZATIONS ;

    **7)**  THAT DRUG TRAFFICKERS OFTEN TAKE PAYMENT IN THE FORM OF STOLEN ITEMS SUCH AS TELEVISIONS, STEREOS, VCR'S, GUNS AND / OR THEY OBTAIN THESE ITEMS LEGITIMATELY WITH DRUG PROFITS ;

    **8)** THAT YOUR AFFIANTS ARE AWARE THAT COURTS HAVE RECOGNIZED  THAT UNEXPLAINED WEALTH IS PROBATIVE EVIDENCE OF CRIMES MOTIVATED BY GREED, IN PARTICULAR, TRAFFICKING IN CONTROLLED SUBSTANCES.

    **9)** THAT YOUR AFFIANTS CAN STATE THAT DRUG TRAFFICKERS ONLY TRANSPORT ENOUGH DRUGS THAT THEY WILL NEED FOR THE SALE. THEY WILL MAINTAIN THE OTHER DRUGS AT A SECURED LOCATION, INCLUDING BUT NOT LIMITED TO THEIR RESIDENCE.

## PROBABLE CAUSE

10) Your affiants can truly state that they are sworn members of the Wilmington Department of Police currently assigned to the Drug, Organized Crime, and Vice division and have a combined 24 years of police experience with the department.

11) Your affiants can truly state that Detective Thomas Looney of the Wilmington Department of Police Drug Unit was contacted by ██████████████ during the month of January 2007 who advised that a black male known as "Manny" was selling large amounts of crack cocaine from an apartment building located in the 400 block of N. Jefferson Street in the City of Wilmington. Said subject (Manny) was known by Detective Looney as Manuel Medley bmnh 6/10/70 as he was the target of past title 16 investigations. Further, the apartment building in question was known to Looney as 400 Jefferson Street, Wilmington, Delaware 19801.

12) Your affiants can truly state that on January 13, 2007 Detectives Looney and Ciber observed Manuel Medley exit the front door to 400 N. Jefferson Street at approximately 0100 hours with a set of keys in his hand. Detective Looney (in a Wilmington Police uniform) approached Medley and asked to speak with same. At that time he agreed to speak with Detective Looney and also consented to a pat down of his person for weapons. At that time Detective Ciber felt what was believed to be numerous large bundles of United States currency in Medley's pants pockets. Detective Ciber subsequently asked Medley if his person could be searched at which time he agreed to the search. At that time thirty-one bundles of U.S.C. totaling $1,130.00 was located in his pockets. Medley was questioned as to the origin of the money and his employment status. Medley could only state that he was unemployed. Said money was then seized and a report submitted under 30-07-3535.

13) Your affiants can truly state that during the third week of February 2007 Detectives Looney and Ciber contacted ████████████ who advised that "Manny" is selling crack cocaine from 400 Jefferson Street apartment D. The informant further advised that "Manny" only utilizes the apartment as a "store front" and arrives at the apartment to sell crack cocaine after 11 P.M. During conversations with "Manny" he advised the informant that the drug unit (Wilmington) only works until 12 P.M. In addition the informant advised that "Manny" employees several unknown black males and black females who loiter in the 400 block of Jefferson as "look outs." The "look outs" contact "Manny" by cellular telephone advising same that a customer was at the front door to the apartment and/or the police were in the area. Prior to speaking with said informant, an inquiry had been completed via DELJIS on Manuel Medley which indicated that he resided at 1126 Old Forge Road, New Castle, Delaware 19720. In addition, a photograph of Medley was also obtained from DELJIS. The photograph of Medley was presented to the informant who advised the subject in the photo was "Manny."

14) Your affiants can truly state that during the fourth week of February 2007, Detectives Ciber and Looney met with ███████████████ (CI) for the purpose of conducting a controlled buy of crack cocaine from Manuel Medley. At that time the photograph of Manuel Medley was presented to the informant. The informant advised the subject in the photograph was "Manny." The CI agreed to attempt the controlled purchase and both themselves and their vehicle were first searched by Detective Ciber for any contraband and currency with negative results. The CI was then provided with departmental issued buy money, serial #'s CC04853687B, DF38253935B, CB43648065C, and CC24346014A. The CI was then directed to respond to 400 North Jefferson Street Wilmington, Delaware and purchase a predetermined amount of crack cocaine. The CI exited their personal vehicle a few blocks away from the target location at approximately 2400hrs. The CI was then observed walking to the target location at which time he/she entered the residence at approximately 0002hrs.

The CI was then observed exiting the target residence at approximately 0003hrs. The CI was then followed back to a predetermined meet location where he/she turned over four (4) pink in color zip lock bags that had an off white rock like substance to Detective Ciber. The substance was later field tested by Detective Ciber and tested positive for the presence of cocaine with a weight of .5 grams. The drugs were later tagged and placed into the evidence locker in accordance with the City of Wilmington Police Department policies and procedures.

The CI was debriefed and advised that he/she walked up to 400 North Jefferson Street and met with Manuel Medley who was standing in the doorway to the residence. Manuel Medley opened the door and let the CI into the residence. Manuel Medley then asked the CI what he/she wanted. The CI asked for the predetermined amount of crack cocaine. Manuel Medley then reached into his pants' pocket and removed a plastic bag that was full of pink in color zip lock bags. Manuel Medley then removed four (4) pink in color zip lock bags and handed same to the CI. The CI then handed Manuel Medley the departmental issued buy money. The CI advised that he/she left the residence and walked back to their vehicle and drove to the predetermined meet location and met Detective Ciber and Looney.

15) Your affiants can truly state that during the third week of February 2007, Detectives Looney and Ciber, along with other members of the Wilmington Department of Police drug unit, responded to the area of 1126 Old Forge Road, New Castle, Delaware 19720 to conduct surveillance. At approximately 2042 hours a subject who was known to be Manuel Medley's brother Corey Medley [redacted] exited the dwelling. At approximately 2120 hours Manuel Medley exited his dwelling and entered a silver Infiniti bearing Delaware registration 520253. A DELJIS inquiry on said registration indicated that the vehicle is registered to Corey Medley at 1108 Inverness Circle, New Castle, Delaware 19720. It should be noted Corey Medley was the target of a DEA investigation involving the distribution of cocaine in New Castle County, Delaware. Corey Medley was subsequently arrested on Federal charges of trafficking in cocaine and was sentenced to 87 months in a Federal Prison. The vehicle traveled onto I-95 north bound and traveled into the City of Wilmington. Medley then parked the vehicle in the 400 block of Washington Street at approximately 2134 hours. Manuel Medley then exited the vehicle and responded into 419 Washington Street and remained until 2157 hours. He then responded into 400 N. Jefferson Street at approximately 2202 hours. At that time two black females were observed exiting 400 N. Jefferson Street with one standing south and one standing north in the block. At that time surveillance was terminated.

16) Your affiants can truly state that during the fourth week of February 2007, Detectives Ciber and Looney met with the CI for the purpose of conducting a controlled buy of crack cocaine from Manuel Medley. The CI agreed to attempt the controlled purchase and both themselves and their vehicle were first searched by Detective Ciber for any contraband and currency with negative results. The CI was then provided with departmental issued buy money, serial #'s GB36876867A, CB34083738B, GC27419795A, and GC12561301A. The CI was then directed to respond to 400 North Jefferson Street Wilmington, Delaware and purchase a predetermined amount of crack cocaine.
The CI exited their personal vehicle a few blocks away from the target location at approximately 2317hrs. The CI was then observed walking to the target location at which time he/she entered the residence at approximately 2319hrs.
The CI was then observed exiting the target residence at approximately 2320hrs. The CI was then followed back to a predetermined meet location where he/she turned over five (5) pink in color zip lock bags that had an off white rock like substance to Detective Looney. The substance was later field tested by Detective Looney and tested positive for the presence of cocaine with a weight of .8 grams. The drugs were later tagged and placed into the evidence locker in accordance with the City of Wilmington Police Department policies and procedures.
The CI was debriefed and advised that he/she walked up to 400 North Jefferson Street and met with an unknown black male who was standing outside the doorway. The unknown black male opened the door and let the CI into the vestibule area. The unknown black male then called the target Manuel Medley on the phone. The CI then observed Manuel Medley exit from the second floor front apartment and walk down the steps. Manuel Medley then asked the CI what he/she wanted. The CI asked for the predetermined amount of crack cocaine. Manuel Medley then reached into his

pants pocket and removed a plastic bag that was full of pink in color zip lock bags. Manuel Medley then removed five (5) pink in color zip lock bags and handed same to the CI. The CI then handed Manuel Medley the departmental issued buy money. The CI then advised that he/she left the residence, walked back to their vehicle, and drove to the predetermined meet location and met these officers.

17) Your affiants can truly state during the third week of February 2007, Detective Cunningham spoke with ▮▮▮▮▮▮▮ who advised that they purchased crack cocaine from "Manny" on several occasions at 400 N. Jefferson Street. The informant advised that "Manny" operates from apartment D and strictly works the night shift from 11 P.M. until 4 or 5 A.M. The informant also advised that a black male subject by the name of "JD" who is described as being in his mid-twenties, 5'8" medium to heavy build works the "day work" shift from 10 A.M. until the early evening for "Manny" and operates from apartment E located in the same building. The informant further advised that both "Manny" and "JD" employ "look outs" in the 400 block of N. Jefferson Street.

18) Your affiants can truly state that on March 15, 2007, Detectives Looney and Ciber met with the Undercover State Police Detective for the purpose of conducting a controlled buy of crack cocaine from Manuel Medley. The Undercover State Police Detective was then provided with departmental issued buy money, serial #'s GJ60162745B, BF78197680E. The Undercover State Police Detective was then directed to 400 North Jefferson Street Apartment D Wilmington, Delaware in order to purchase a predetermined amount of crack cocaine.
The Undercover State Police Detective exited his undercover vehicle a few blocks away from the target location at approximately 2315hrs. The Undercover State Police Detective was then observed walking to the target location at which time they entered the residence at approximately 2317hrs. The Undercover State Police Detective was then observed exiting the target residence at approximately 2320hrs. The Undercover State Police Detective was then followed back to a predetermined meet location where they turned over five (5) pink in color zip lock bags that had an off white rock like substance to Detective Looney. The substance was later field tested by Detective Looney and tested positive for the presence of cocaine with a weight of .5 grams. The drugs were later tagged and placed into the evidence locker in accordance with the City of Wilmington Police Department policies and procedures.
The Undercover State Police Detective was debriefed and advised that they walked to 400 North Jefferson Street and met with a black male who asked what they wanted. The Undercover State Police Detective then advised they were looking for "Manny." The unknown black male then stated his name was "Harv" and called "Manny" on the phone. The black male, "Harv," then walked the Undercover State Police Detective inside of the target residence. Once inside the Undercover State Police Detective observed "Manny" come from the second floor front and walked down the steps. The Undercover State Police Detective asked for the predetermined amount of crack cocaine. Manuel Medley then reached into his pants' pocket and removed a plastic bag that was full of pink in color zip lock bags. Manuel Medley

then removed five (5) pink in color zip lock bags and handed same to the Undercover State Police Detective. The Undercover State Police Detective then handed Manuel Medley the departmental issued buy money. "Manny" then gave the Undercover State Police detective his cell phone number which was 302-250-2099. The Undercover State Police Detective then advised that they left the residence, walked back to their vehicle, drove to the predetermined meet location, and met these officers.

19) Your affiants can truly state that on March 27, 2007, Detectives Looney and Ciber met with an Undercover State Police Detective for the purpose of conducting a controlled buy of crack cocaine from Manuel Medley. The Undercover State Police Detective was then provided with departmental issued buy money, serial #'s EB64488866F, CF01554089B. The Undercover State Police Detective then called "Manny" on his cell phone 302-250-2099. "Manny" answered the cell phone and advised the Undercover State Police Detective he was up and to come over to Jefferson Street. The Undercover State Police Detective then responded to 400 North Jefferson Street apartment D Wilmington, Delaware in order to purchase a predetermined amount of crack cocaine.
The Undercover State Police Detective exited his undercover vehicle a few blocks away from the target location at approximately 2307hrs. The Undercover State Police Detective was then observed walking to the target location at which time they met a black male out front and entered the residence at approximately 2308hrs. The Undercover State Police Detective was then observed exiting the target residence at approximately 2310hrs.
The Undercover State Police Detective was then followed back to a predetermined meet location where they turned over three (3) blue in color zip lock bags and two (2) green in color zip lock bags that had an off white rock like substance to Detective Looney. The substance was later field tested by Detective Looney and tested positive for the presence of cocaine with a weight of 1.0 gram. The drugs were later tagged and placed into the evidence locker in accordance with the City of Wilmington Police Department policies and procedures.
The Undercover State Police Detective was debriefed and advised that they walked to 400 North Jefferson Street and met up with "Manny" as he was coming out of 402 North Jefferson Street. "Manny" and the Undercover State Police Detective then walked inside of 400 N. Jefferson St. Once inside, the Undercover State Police Detective asked for the predetermined amount of crack cocaine. Manuel Medley then walked up the steps to the second floor and responded to the front apartment. Manuel Medley then returned with three (3) blue in color zip lock bags and two (2) green in color zip lock bags and handed same to the Undercover State Police Detective. The Undercover State Police Detective then handed Manuel Medley the departmental issued buy money. The Undercover State Police Detective advised that they left the residence, walked back to their vehicle, and drove to the predetermined meet location and met these officers.

20) Your affiants can truly state that during the first week of April 2007, Detectives Looney and Ciber and other members of the Wilmington Department of Police drug unit responded to 1126 Old Forge Road New Castle, Delaware to conduct surveillance. Upon arrival the silver Infinity Q45 bearing Delaware registration 520253 was observed parked near the dwelling. At approximately 2010 hours, Manuel Medley was observed exiting the dwelling and entering the vehicle. The vehicle traveled into the development of Woodborne and parked in front of a dwelling located on Wildfire Lane at approximately 2014 hours. Medley subsequently exited the vehicle and responded into an unknown dwelling located in the block. At approximately 2042 hours, Medley exited the dwelling and entered the Q45. The vehicle then traveled back to 1126 Old Forge Road where Medley entered the home. At approximately 2108 hours, the Undercover State Police Detective contacted Medley via cellular phone and inquired if he (Medley) was working. At that time Medley advised he was not going to be working for a day or two.

21) Your affiants can truly state that on April 6, 2007, Detective Looney and Ciber met with the Undercover State Police Detective for the purpose of conducting a controlled buy of crack cocaine from Manuel Medley. The Undercover State Police Detective was then provided with departmental issued buy money, serial #'s EB88880245H, EA77243416E. The Undercover State Police Detective then called "Manny" on his cell phone 302-250-2099. "Manny" answered the cell phone and advised the Undercover State Police Detective to "come in, no problems". The Undercover State Police Detective then responded to 400 North Jefferson Street, Apartment D Wilmington, Delaware in order to purchase a predetermined amount of crack cocaine.

The Undercover State Police Detective exited his undercover vehicle a few blocks away from the target location at approximately 2314hrs. The Undercover State Police Detective then called "Manny" again and advised he was in the area. "Manny" advised them to "come on in." The Undercover State Police Detective was then observed walking to the target location. The Undercover State Police Detective then had a conversation with someone on the second floor and entered the residence at approximately 2317hrs. The Undercover State Police Detective was then observed exiting the target residence at approximately 2318hrs.

The Undercover State Police Detective was then followed back to a predetermined meet location where they turned over five (5) green in color zip lock bags that had an off white rock like substance to Detective Looney. The substance was later field tested by Detective Looney and tested positive for the presence of cocaine with a weight of .7 grams. The drugs were later tagged and placed into the evidence locker in accordance with the City of Wilmington Police Department policies and procedures.

The Undercover State Police Detective was debriefed and advised that they walked to 400 North Jefferson Street and spoke to "Manny" who was standing on the second floor landing of the fire escape. "Manny" then asked the Undercover State Police Detective what they needed. The Undercover State Police Detective then asked for a predetermined amount of crack cocaine. "Manny" then walked into the second floor front apartment as the Undercover State Police Detective entered the target

residence. Manuel Medley walked down the steps from the second floor. Manuel Medley then handed the Undercover State Police Detective five (5) green in color zip lock bags that had an off white rock like substance. The Undercover State Police Detective then handed Manuel Medley the departmental issued buy money. The Undercover State Police Detective then advised that they left the residence, walked back to their vehicle, drove to the predetermined meet location and, met Detective Ciber and Looney.

22) Your affiants can truly state that on April 16, 2007, Detectives Looney and Ciber met with ████████████████ for the purpose of attempting a controlled purchase of crack cocaine from Manuel Medley at 400 N. Jefferson Street, Wilmington, Delaware. At approximately 2045 hours, ████████████████ responded to 400 N. Jefferson Street apartment D. At that time the informant received no response at the door and exited the apartment. Once on the sidewalk, the informant was approached by an unknown black male who asked the informant what they were looking for. The informant advised they were trying to find "Manny" at which time the unknown black male advised "Manny" does not come around until 11 P.M.

23) Your affiants can truly state that Detective Looney spoke with ████████ ████████████████████████ reference to Manual Medley. The informant advised that he/she has been buying crack cocaine from Medley for approximately 9 years and has spent approximately $40,000.00 during that time. They further advised that Medley does not arrive at the apartment located at 4th and Jefferson St. until 11 or 12 P.M. The informant also stated that "Manny" has not been at the apartment (D) for approximately 1 to 1 ½ months and believes he was in Las Vegas for part of that time period. While Medley was on "vacation" the informant advised that "JD" is conducting business at the Apartment.

24) Your affiants can truly state that during the fifth week of June 2007, Detectives Looney and Pfaff met with ████████████████ for the purpose of conducting a controlled buy of crack cocaine from Manuel Medley at 400 Jefferson Street apartment D. The informant and vehicle were first searched by Detective Looney for any contraband and currency with negative results. The CI was then provided with departmental issued buy money, serial #'s GL03634976B and GC58345525A. The CI was then directed to respond to 400 North Jefferson St. Wilmington, Delaware and purchase a predetermined amount of crack cocaine. The CI exited their personal vehicle a few blocks away from the target location at approximately 2256hrs. The CI was then observed walking to the target location at which time he/she entered the residence at approximately 2257hrs. The CI was then observed exiting the target residence at approximately 2258hrs. The CI was then followed back to a predetermined meet location where he/she turned over four (4) blue in color zip lock bags that had an off white rock like substance to Detective Looney. The substance was later field tested by Detective Looney and tested positive for the presence of cocaine with a weight of .5 grams.

The drugs were later tagged and placed into the evidence locker in accordance with the City of Wilmington Police Department policies and procedures.

The CI was debriefed and advised that he/she walked to 400 North Jefferson St. and met with "JD" who was described as being bmnh 5'8" tall, with a beard wearing a blue shirt and jeans at apartment D. "JD" then asked the informant what he/she wanted. The CI asked for the predetermined amount of crack cocaine. "JD" then reached into his pants pocket and removed a plastic bag that was full of blue in color zip lock bags. "JD" then removed four (4) blue in color zip lock bags and handed same to the informant. The informant then handed "JD" the departmental issued buy money.    The informant advised that he/she left the residence, walked back to their vehicle, drove to the predetermined meet location, and met these officers.

25) Your affiants can truly state that Detectives Cunningham and Riley spoke with ████████████████████ on the 2nd of August 2007. The informant advised that "Manny" and "JD" are selling crack cocaine from the apartment building located at 400 N. Jefferson Street. "JD" is known to reside in apartment E and sells crack cocaine during the daytime hours. "Manny" is known to sell crack cocaine from apartment D and works during the evening hours after, 11 P.M. During this investigation Gregory A. Ward ████████ was developed as possibly being "JD." A photograph of Ward was presented to the confidential informant who advised the subject depicted in the photograph was "JD." The informant further advised that the pair employ other subjects who sell crack cocaine on the street in the area.

26) Your affiants can truly state that during the week of August 12-18, 2007, Detective Popp of the Delaware State Police obtained information from ████████████ ████████████ who had personal knowledge of a subject at this time only known as "JD" who was selling crack cocaine. The CI advised they had purchased crack cocaine from "JD" in the past and was knowledgeable reference the locations and vehicles used during the distribution of crack cocaine by "JD." The CI has first hand knowledge of how "JD" operates his illegal drug distribution business and places "JD" hides his crack cocaine. The CI has first hand knowledge of how "JD" uses runners and subjects who look out for the police during the hours of operation.

27) Your affiants can truly state that during the week of August 12th, 2007 through August 18, 2007, Detective Popp met with the CI in reference to conducting a controlled purchase of crack cocaine from JD. The CI, in Detective Popp's presence, arranged the purchase of crack cocaine from JD and responded to the residence occupied by JD, 400 N. Jefferson St. apt E. Prior to responding to the scheduled delivery, Detective Popp searched the CI making sure they were free from any controlled substances and/or contraband. Detective Popp then provided the CI with an amount of DSP Official Funds (serial #'s listed at the end of the report) with which to purchase the crack cocaine. The CI was followed to the residence of JD and remained under surveillance at all times. After meeting with JD and purchasing the crack cocaine, the CI was followed to a predetermined location where Detective Popp took custody of the purchased crack cocaine. At this location, the CI was again searched and found to be free of any controlled substances and/or contraband. Unit

members maintained visual surveillance on the residence of JD and observed him as he exited the residence and made contact with the CI. Both subjects entered into the residence where the delivery was conducted. The CI was observed exiting the residence within 1 minute. Surveillance remained at the residence and observed additional subjects responding to the residence. The same routine was observed with each individual. The unknown responding individual would make contact with subjects outside the residence, these were the drug runners, and then conduct from Detective Popp's experience, a hand to hand drug transaction.

At Troop 2, Detective Popp processed the suspected crack cocaine purchased by the CI. The suspected crack cocaine was field tested using Narcotest #13. The test kit produced a blue color signifying a positive reading for cocaine. The cocaine was weighed which resulted in a weight of 1.6 grams. The evidence was logged into the evidence locker at Troop 2 pending further investigation.

28) Your affiants can truly state on ███ of September 07, ████████████████████████████████████████████████ advised "JD" (who is also known as "crab") resides at 400 Jefferson Street in an apartment with a front porch (E) and sells crack cocaine during the daytime. The subject also advised that "Manny" sells at night from a second floor apartment (D) in the building but resides in New Castle past the Wilton (1126 Old Forge Rd). The subject further advised "Manny" keeps his money and drugs in his home in New Castle as he (Manny) was a victim of a home invasion where the suspects removed $20,000 from the dwelling. "Manny" is also known to drive an Infinity Q45 which he drives into the City of Wilmington every night and parks same in the 400 block of Washington Street. He then walks to 400 Jefferson Street and opens up "shop." "Manny" is known to work a strict shift of 10 P.M until 4:30 A. M. and was heard "preaching" to the "young drug dealers" that they must treat selling drugs like a business and must have set hours and have employees.

29) Your affiants can truly state that during the fourth week of September 2007, Detective Riley was contacted by Detective Orzechowski of the New Castle County Police Department. They informed same that they had received information from ████ ████████████ regarding 'JD' and 'Manny.' They further explained that 'JD' was positively identified as Gregory Ward ████████ and 'Manny' was identified as Manuel Medley 06-10-70 by his informant. The confidential informant has purchased crack cocaine from Medley and Ward on several occasions. The informant recently brought another individual to Ward's apartment, 400 N. Jefferson St. apt E for the purpose of selling a handgun. The informant's acquaintance sold a handgun to Ward for $250.00 United States Currency. Detective Orzechowski subsequently drove the informant to the area where he pointed out 400 N. Jefferson St. apt E as being Ward's.

00000013

30) Your affiants can truly state that during the first week of October 2007, Detective Riley spoke with ███████████████████████ The informant advised this detective that Medley sells crack cocaine out of 400 N. Jefferson St. apt D during the nighttime hours; between 11:00 PM and 4:00 AM. The informant stated that Medley does not keep his illegal drugs at the apartment when he is not there, however, every night he brings the drugs and sells and cooks same inside of apartment D. The informant explained that Ward would sell during the day time hours. Inside of Ward's apartment, apt E, they have seen an assault rifle in the kitchen, a .38 caliber handgun under the couch, and a .45 caliber and .9mm handgun under the bed in Ward's apartment. The informant also advised that customers could contact Ward via cellular phone #302-543-2425 and place their order.

31) Your affiants can truly state that during the first week of October 2007, Detectives Cunningham and Riley met with ████████████████ for the purpose of conducting a controlled buy of crack cocaine from Gregory A. Ward aka "JD" at 400 Jefferson Street apartment E. The informant and vehicle were first searched by these Detectives for any contraband and currency with negative results. The informant was then provided with departmental issued buy money, serial #'s CD38224619A, GG25578812A and EB85509224A. The confidential informant then contacted "JD" via cellular telephone at 543-2425 and ordered a predetermined amount of crack cocaine then advising same they (informant) was on their way. The informant drove their personal vehicle to the area and exited same a few blocks away from the target location at approximately 2335 hrs. The informant then walked to the target location at which time he/she entered the residence at approximately 2336hrs. The informant was then observed exiting the target residence at approximately 2337hrs and responding to their vehicle. Prior to entering the vehicle, the informant walked back to the sidewalk area in front of 400 N. Jefferson Street and held a conversation with a black male subject on the porch to apartment E. After approximately two minutes the informant walk back to their vehicle and pulled off. The informant was then followed back to a predetermined meet location where he/she turned over three (3) yellow in color zip lock bags that had an off white rock like substance to these detectives. The substance was later field tested by Detective Cunningham and tested positive for the presence of cocaine with a weight of .6 grams. The drugs were later tagged and placed into the evidence locker in accordance with the City of Wilmington Police Department policies and procedures. The CI was debriefed and advised that he/she walked up to 400 North Jefferson Street and responded to apartment D. Upon knocking on the door a black male subject described as being 5'09" in his mid fifties, slim build exited the apartment and asked what they needed. The informant asked where "JD" was at which time the black male subject replied "he is sleeping, I have the pack". The informant then asked for the predetermined amount of crack cocaine from the subject who then reached into his pants pocket and removed a plastic bag that was full of yellow in color zip lock bags. The informant then handed the subject the departmental issued buy money. The informant advised that he/she left the residence and walked back to their vehicle when they noticed "JD" on the porch. The informant responded back to

the sidewalk area and held a brief conversation with "JD" in reference to being told
he was sleeping. The informant then responded back to their vehicle and drove to
the predetermined meet location and met these officers.

32) Your affiants can truly state that state that during the first week of October 2007,
Detectives Cunningham and Riley responded to the 400 block of Washington Street
at approximately 2230 hours and observed the silver Infiniti Q45 bearing Delaware
registration 520253 operated by Manual Medley parked and unoccupied. These
Detectives then met with ████████████████ for the
purpose of conducting a controlled buy of crack cocaine from Manual Medley at 400
Jefferson Street apartment D. The informant and vehicle were first searched by these
Detectives for any contraband and currency with negative results. The informant was
then provided with departmental issued buy money, serial #'s CK93461247A and
IC32254839B. The informant drove their personal vehicle to the area and exited
same a few blocks away from the target location at approximately 2315 hrs. The
informant then walked to the target location at which time he/she entered the
residence at approximately 2316hrs. The informant was then observed exiting the
target residence at approximately 2317hrs and responding to their vehicle.
The informant was then followed back to a predetermined meet location where
he/she turned over four (4) yellow in color zip lock bags that had an off white rock
like substance to these detectives. The substance was later field tested by Detective
Cunningham and tested positive for the presence of cocaine with a weight .4 grams.
The drugs were later tagged and placed into the evidence locker in accordance with
the City of Wilmington Police Department policies and procedures.
The CI was debriefed and advised that he/she walked up to 400 North Jefferson
Street where Manual Medley was observed standing on the front porch area to the
apartment (D). Upon responding into the hallway of the building Medley exited
apartment D and asked the informant what they needed. The informant then asked
for the predetermined amount of crack cocaine from Medley who then reached into
his pants pocket and removed a plastic bag that was full of yellow in color zip lock
bags. The informant then handed the subject the departmental issued buy money.
The informant then advised that he/she left the residence and walked back to their
vehicle and drove to the predetermined meet location and met these officers.

33) Your affiants can truly state that ████████████████ October 2007, ████████
████████████████████████████████████████████████████████████ an
admitted, active member of Medley's drug organization ████████████ advised that
Medley will drive the Infiniti Q45 bearing DE 520253 into the city of Wilmington,
from his house in the county, at approximately 2130 hrs (9:30 PM). First, Medley
will circle the area of 4th and Jefferson St., looking for police. Medley will then park
his vehicle in the 400 block of Washington St. and enter 419 Washington St., first
floor, back apartment. However, the informant stated that Medley had been recently
looking into occupying a second floor apartment due to recent burglaries. The
informant explained that this residence is where Medley packages, cooks, and keeps
his cache of illegal drugs. The informant has been inside of this apartment on

several occasions and has observed Medley cooking and packaging crack cocaine. The informant has also received crack cocaine from Medley in this apartment for distribution. Medley will then have a 'lookout' carry the amount of illegal drugs that will be sold that night to 400 N. Jefferson St. apt. D. Once he arrives at 400 N. Jefferson St. apt. D, Medley will begin to sell 'street level' crack cocaine. Occasionally, a customer will contact Medley in reference to buying a larger amount of crack cocaine. Medley will then walk back to 419 Washington St. and conduct the transaction inside of this apartment. The informant further advised that when Medley has a substantial amount of United States Currency on his person, he will respond to the Infiniti and place same into the trunk of the vehicle. Medley will station 'lookouts' throughout the 400 blocks of Washington and Jefferson St. for police. The subject further stated that he believed Medley was conducting home repairs on 1126 Old Forge Rd in an effort to sell same.

34) Your affiants can truly state that on October 16, 2007 at approximately 2150 hours, Medley was observed parking his Infiniti Q45 in the 400 block of Washington St. and entering 419 Washington St. A few minutes later Medley emerged from 419 Washington St. with an unknown, black female and began walking towards the 400 block of Jefferson St. Detective Emory continued surveillance on the 400 block of Washington St. Detective Emory observed 'lookouts' checking on the status of the Infiniti Q45 after unknown subjects ventured close to same.

35) Your affiants can truly state that during the month of October 2007, surveillance was conducted on 1126 Old Forge Rd. on several occasions. No vehicles were observed in the driveway and the residence appeared in darkness. Neither Medley nor his vehicles were observed at this location at any time, however, the owner of the property remains Medley, Melvina. Your affiants believe Medley may have changed his residence due to the fact that he was the victim of a home invasion at 1126 Old Forge Rd.

36) Your affiants can truly state that on October 17, 2007 at approximately 0343 hours, Medley was observed walking back to the Infiniti Q45 and entering same. Medley was then covertly followed to 1126 Old Forge Road where he retrieved mail for the residence at approximately 0400 hours. Medley was then followed to the Apple Chase apartments located at 1000 Thornhill Dr. where he exited his vehicle and entered the apartment building at approximately 0415 hours. Surveillance was terminated at approximately 0500 hours.

37) Your affiants can truly state that on October 18, 2007, Detective Dan Silva received a subpoena from Deputy Attorney General Brian Robertson for a list of tenants occupying the 700, 900, and 1000 buildings of Apple Chase apartments. The subpoena was served to the staff of Apple Chase apartments at approximately 1800 hours. Melvina Medley returned as being the occupant of 1009 Thornhill Dr. This is the same building that Medley was observed entering. Detective Silva also observed Medley's Infiniti Q45 parked in front of this building.

38) Your affiants can truly state that on October 18, 2007, Detective Riley and
Cunningham, conducted surveillance on the 400 block of Washington St. At
approximately 2200 hours, Medley was observed exiting the front door of 419
Washington St. with another unknown, black male. Both subjects walked southbound
in the block, then westbound on W. 4th St. towards the 400 block of Jefferson St.
Surveillance was terminated at this time.

39) Your affiants can truly state that on October 18, 2007, Detective Riley and
Cunningham, met with ███████████████████████████ for the purpose
of securing a controlled purchase of crack cocaine from Manuel Medley. The
informant was first searched for any contraband or United States Currency with
negative results. The informant was supplied with departmental 'buy' money (serial
numbers recorded). The informant was then followed to the 400 block of Jefferson
St. The informant walked to the front door of 400 N. Jefferson St. and entered same
at approximately 2240 hours. At approximately 2242 hours the informant exited the
building, was followed to the predetermined meet location, and met with these
detectives. The informant advised that they entered 400 N. Jefferson and were let
into apt. D where they met with Medley. The informant advised that they would like
to purchase an amount of crack cocaine. Medley retrieved a sandwich bag full of
pink tinted zip lock bags, each containing an off-white in color chunky substance,
and handed an amount to the informant. The informant handed Medley the 'buy'
money in exchange. The informant then exited the building and met with these
detectives where they handed over the pink tinted zip lock bags containing the off-
white in color chunky substance which later field tested positive for crack cocaine.
The informant was researched for contraband and United States Currency with
negative results.

40) Your affiants can truly state that a nighttime search warrant is being requested on the
aforementioned locations, i.e. 400 N. Jefferson Street apartment D, Wilmington,
Delaware 19801, 419 Washington St. bottom floor, rear apartment Wilmington, DE
19801, 1126 Old Forge Road New Castle Delaware 19720, and 1009 Thornhill Dr.
Apple Chase apartments Newark, DE 19702 as a nexus exists between each location
due to the on going criminal organization formed by Medley and Ward. Further,
daytime purchases of crack cocaine were attempted at 400 N. Jefferson Street
apartment D from Manuel Medley and contact was not made with same. Due to the
nexus between Manuel Medley in 400 N. Jefferson St apartment D and 419
Washington St. bottom floor, rear apartment, a nighttime search is required to be
conducted simultaneously on both locations to prevent the removal or destruction of
evidence. Also, a nighttime search of Manuel Medley's residence at 1126 Old Forge
Road New Castle, Delaware and 1009 Thornhill Dr. Apple Chase apartments
Newark, Delaware 19702 is requested to prevent the removal or destruction of
evidence by his brother Corey Medley, his wife Melvina Medley, or other person(s)
not yet identified during this investigation. As outlined in the body of this affidavit,
Medley employees "look outs" on the street with cellular telephones who would be
able to contact person(s) to remove or destroy evidence from Old Forge Road or
Thornhill Dr.

00000017

41) Your affiants can truly state that on October 19, 2007 at approximately 1648 hours a Justice of the Peace Court #20 Search Warrant was executed on 419 N. Washington St. apartment #2. Immediately upon entry, members of the Drug, Organized Crime, and Vice Division observed that the apartment appeared to be vacant. ███████ ██████████ who was sitting on the front steps of 419 Washington St. advised officers that a subject by the name of 'Manny' had just moved out of apartment #2 a week or two ago. ███ further explained that 'Manny' now occupied unit #4 on the second floor. ████████ stated that ██ sees 'Manny' at this apartment building a few times a week, usually around 0100 or 0200 hours. 'Manny' took over #4 when ████████████████ moved out. ██████████ was shown a DELJIS picture of Manuel Medley at which time ██ immediately identified the subject in the photograph as the same person ██ knew as 'Manny.'

42) Your affiants can truly state that on October 19, 2007 at approximately 1659 hours, members of the Drug, Organized Crime, and Vice Division forced entry to 419 Washington St. apartment #4 due to exigent circumstances. Detective Riley previously stated that he spoke with an admitted, active member of Medley's drug organization █████████████████████████████ who advised that Medley had plans to move his 'stash' house to the second floor within the past week or two. The subject also explained that Medley hires several 'lookouts,' whom live in the area, to facilitate his illegal drug enterprise. This information, coupled with ██████████ statements, led investigators to believe that Medley was now using apartment #4. The detectives who made entry to apartment #4 scanned the apartment for persons and secured same; the apartment was empty of persons. In plain view, detectives observed bags with what appeared to be drug residue in the apartment.

43) Your affiants can truly state that Medley was taken into custody at 1009 Thornhill Dr. Apple Chase Apartments Newark, DE 19702, October 19, 2007 at approximately 1650 hours. The keys to Medley's Infiniti Q45 were also located in this apartment. The keys were transported to 419 Washington St. apartment #4. Detective Silva discovered keys to the main building of 419 Washington St. and the front and back door to apartment #4 on the same key chain that Medley's vehicle keys were located on.

40) Wherefore, these affiants pray that a nighttime search warrant may be issued authorizing a search of:

1) 419 Washington St. apartment #4 Wilmington, DE

SWORN TO AND SUBSCRIBED THIS 19th DAY OF October 2007

AFFIANT: _____    DATE:  19 October 2007

Todd C. Riley

_____    DATE: 19 October 2007

JUDGE OF THE JUSTICE OF THE PEACE COURT #20,
NEW CASTLE COUNTY,
STATE OF DELAWARE

00000019

# EXHIBIT C

# IN THE JUSTICE OF THE PEACE COURT
## STATE OF DELAWARE

**IN THE MATTER OF:**                    **Court: Justice of the Peace Court 20**

419 Washington St.
Apartment #4
Wilmington, DE 19801

## INVENTORY AND AFFIDAVIT OF PROPERTY
### TAKEN UNDER SEARCH WARRANT

I received the attached search warrant on _.19th__ of _October_ 2007 and have executed it as follows:

On _19th__of _October 2007__ at _2017_ hours, I searched the premises described in the warrant and left a copy of the warrant and a receipt for the items seized with the person in the warrant and left a copy of the warrant and a receipt for the items seized with the person from whom or from whose premises the property was taken, if present, if not present, at the premises.

The inventory was made and signed in the presence of: _____n/a_____, the person from whom or from whose premises the property was taken;

AND/OR

xxx.___   Another witness _____.

The following is a list of the property taken pursuant to the warrant:
**See attached documents**
The search warrant was executed in the manner described above and this inventory is a true and detailed account of all the property taken by me on the warrant.

Officers' signature                                      19th October 2007
                                                              Date

_Cpl Todd Riley_____
Name Title

Witness                                                  19th October 2007
                                                              Date

Title: _Cpl. Christopher Cunningham
Address: 300 N. Walnut St._____

419 Washington St.
Apartment #4
Wilmington, DE 19801
**30-07-15230**

1. American Weigh digital scale
2. Numerous sandwich bags
3. Aerosol glass cleaner can with false bottom
4. One knotted plastic bag containing an off-white in color chunky substance which field tested positive for crack cocaine (approx 28.5 grams)
5. One knotted plastic bag containing an off-white in color chunky substance which field tested positive for crack cocaine (approx 28.6 grams)
6. One plastic bag containing an off-white in color chunky substance which field tested positive for crack cocaine (approx .1 grams)
7. One digital scale
8. Red cookie container
9. One clear sandwich bag containing an off-white in color chunky substance which field tested positive for crack cocaine (approx 7 grams)
10. One clear sandwich bag containing an off-white in color chunky substance which field tested positive for crack cocaine (approx 7.8 grams)
11. One plate with crack cocaine residue
12. Razor with crack cocaine residue
13. One bag containing an off-white in color chunky substance which field tested positive for crack cocaine (approx 20.3 grams)
14. Silver and black in color KBI .9mm MAK handgun (serial #V11665), loaded with four .380 caliber bullets
15. One beige in color Sentry safe
16. One black in color .40 caliber Sig Sauer model P229 handgun (serial #AM67479)
17. One black handgun magazine
18. One .9mm Luger bullet
19. Numerous small, empty zip lock bags
20. Baking soda
21. One IS-150V digital pocket scale
22. One Pyrex measuring cup with crack cocaine residue
23. One .9mm magazine
24. Nine .40 caliber bullets
25. Three .9mm bullets
26. One black in color scale disguised as a cell phone
27. Blue in color sentry safe

00000107

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Criminal Action No. 07-140-GMS** |
| | : | |
| MANUEL D. MEDLEY, | : | |
| | : | |
| Defendant. | : | |

## <u>ORDER</u>

This _____ day of _____, 2008, the foregoing Motion to

Suppress Evidence having been heard and considered,

IT IS ORDERED that the motion is GRANTED and the United States is precluded

from using at the trial of this matter all evidence seized from Apartment #4, 419

Washington Street, Wilmington, Delaware.

_____
J.

## CERTIFICATE OF SERVICE

I, Joseph W. Benson, Esq., do hereby certify that on this 11th day of

February, 2008, I caused to be delivered by hand two true and correct copies of the

foregoing Motion to Suppress Evidence to:

        Shawn A. Weede, Esq.
        Assistant United States Attorney
        The Nemours Building
        1007 Orange Street, Suite 700
        P.O. Box 2046
        Wilmington, DE 19899-2046

                         /s/ Joseph W. Benson
                         Joseph W. Benson, Esquire